Craig W. Broadbent, #029032
Lisa M. Hanger, #031123
**SADDLEWORTH LAW, PLLC**
4742 N 24th St., Suite 300
Phoenix, AZ 85016
Office: (480) 522-2080
CraigB@SaddleworthLaw.com
*Attorneys for Plaintiff CPS*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **CREATIVE POWER SOLUTIONS, an Arizona corporation,** | Case No. _____ |
| **Plaintiff,** | |
| **v.** | **COMPLAINT** |
| **ENERGY SERVICES GROUP, an Arizona limited liability company; INNOVATIVE ENERGY, and Arizona limited liability company; BRENT GREGORY and MARIA GREGORY, husband and wife; CHRISTOPHER BONILHA and JANE DOE BONILHA, husband and wife; EVELLYN ANCHESCHI and JOHN DOE ANCHESCHI, wife and husband; BRENT ALLEN GREGORY AND MARIA ROSARIO GREGORY, AS TRUSTEES OF THE MONTALDEO REVOCABLE TRUST ESTABLISHED ON JULY 25, 2012; DOES I through X; and ROE CORPORATIONS I through X, inclusive,** | |
| **Defendants.** | |

Plaintiff Creative Power Solutions ("Plaintiff" or "CPS"), by and through undersigned counsel, hereby files its Complaint against Defendants Energy Services

Group, LLC ("ESG"), Innovative Energy, LLC ("Innovative"), Brent Gregory and Maria Gregory ("Gregory"); Christopher Bonilha ("Bonilha"); Evellyn Ancheschi ("Ancheschi") and Brent Allen Gregory and Maria Rosario Gregory, as Trustees of the Montaldeo Revocable Trust established on July 25, 2012 ("Montaldeo"), collectively Defendants ("Defendants"), and hereby alleges as follows:

## PARTIES

1.     Plaintiff is an Arizona corporation doing business in Maricopa County, Arizona.  Plaintiff is engaged in interstate commerce.  It is a research and developmental engineering group specializing in combustion and provides energy solutions to companies around the world.

2.     Upon information and belief, at all times relevant to the allegations in this Complaint, Defendant ESG was an Arizona limited liability company. Upon information and belief Defendant ESG (as it is known by that name) is no longer active in the State of Arizona.

3.     Upon information and belief, Innovative Energy is an Arizona limited liability company, active in the State of Arizona.  Upon information and belief, Defendant Innovative Energy, LLC is the alter ego of Defendant ESG, because ESG changed its name to Innovative Energy, LLC with the Arizona Corporation Commission in July 2019.

4.     Upon information and belief, Defendant Brent Gregory is an individual residing in Maricopa County, Arizona.

5.     Upon information and belief, at all times relevant to the allegations in this Complaint, Defendant Brent Gregory was an individual doing business in connection with

his management interest in Defendants ESG and/or Innovative and received profits from Defendants ESG and/or Innovative.

6.      Upon information and belief, at all times relevant, Defendant Brent Gregory was acting within the scope of his authority with and in furtherance of Defendants ESG/Innovative's business interests.

7.      Upon information and belief, Defendant Maria Gregory is an individual residing in Maricopa County, Arizona.

8.      Upon information and belief, at all times relevant to the allegations in this Complaint, Defendant Maria Gregory was an individual doing business in connection with her management interest in Defendants ESG and/or Innovative and received profits from Defendants ESG and/or Innovative.

9.      Upon information and belief, at all times relevant, Defendant Maria Gregory was acting within the scope of her authority with and in furtherance of Defendants ESG/Innovative's business interests.

10.      Upon information and belief, at all times relevant to this Complaint, Defendants Gregory were agents acting on behalf of ESG and/or Innovative.

11.      Upon information and belief, Defendants Gregorys' actions so alleged were for the benefit of and in furtherance of the marital community.   As such, the community is liable for the actions described herein.

12.      Upon information and belief, Defendant Christopher Bonilha is an individual residing in Maricopa County, Arizona.

13.     Upon information and belief, at all times relevant to the allegations in this Complaint, Defendant Christopher Bonilha was an individual doing business in connection with his management interest in Defendants ESG and/or Innovative and received profits from Defendant ESG and/or Innovative.

14.     Upon information and belief, at all times relevant, Defendant Bonilha was acting within the scope of his authority with and in furtherance of Defendant ESG's business interests.

15.     At all times relevant to this Complaint, Defendant Bonilha was an agent acting on behalf of ESG.

16.     Upon information and belief, Defendant Bonilha's individual actions so alleged were for the benefit of and in furtherance of the marital community.  As such, the community, including Jane Doe Bonilha, is liable for the actions described herein. Defendant Jane Doe Bonilha's true name is unknown at this time, but will be amended upon determination of her true name to reflect her true name.

17.     Upon information and belief, Defendant Evellyn Ancheschi is an individual residing in Maricopa County, Arizona.

18.     Upon information and belief, at all times relevant to the allegations in this Complaint, Defendant Evellyn Ancheschi was an individual doing business in connection with her management interest in Defendants ESG and/or Innovative and received profits from Defendant ESG and/or Innovative.

19.     Upon information and belief, at all times relevant, Defendant Ancheschi was acting within the scope of her authority with and in furtherance of Defendant ESG's business interests.

20.     Upon information and belief, at all times relevant to this Complaint, Defendant Ancheschi was an agent acting on behalf of ESG.

21.     Upon information and belief, Defendant Ancheschi's individual actions so alleged were for the benefit of and in furtherance of the marital community.  As such, the community, including John Doe Ancheschi, is liable for the actions described herein. Defendant John Doe Ancheschi's true name is unknown at this time, but will be amended upon determination of his true name to reflect his true name.

22.     Upon information and belief, Defendant Brent Allen Gregory is a Trustee of the Montaldeo Revocable Trust established on July 25, 2012, which was involved in the management of Defendant ESGs and Innovative and received profits from Defendant ESG and Innovative.

23.     Upon information and belief, Defendant Maria Rosario Gregory is a Trustee of the Montaldeo Revocable Trust established on July 25, 2012, which was involved in the management of Defendants ESG and Innovative and received profits from Defendant ESG and Innovative.

24.     The true names and capacities whether individual, corporate, associate, partnership or otherwise, of the defendants herein designated as DOES 1 through l0 and ROE CORPORTIONS 1 through 10, inclusive. are unknown to Plaintiff who therefore sues said Defendants by such fictitious names. Plaintiffs will seek leave of the Court to

insert the true names and capacities of such defendants when the same have been ascertained and will further seek leave to join said defendants in these proceedings.

## JURISDICTION AND VENUE

25.     The Court possess jurisdiction under 28 U.S.C. § 1331. Plaintiff's claims present federal questions.

26.     Jurisdiction is proper pursuant to 18 U.S.C. § 1965, which allows for nationwide jurisdiction pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968. 14.

27.     District Courts have supplement jurisdiction over related claims after original jurisdiction has been established.  28 U.S.C. § 1367.

28.     Venue is proper in the District of Arizona. Defendants have caused substantial part of the events or omissions giving rise to Plaintiffs' claims to occur in Maricopa County, Arizona which give rise to Plaintiff's claims, and Plaintiff suffered damages in Maricopa County, Arizona.  28 U.S.C. § 1391(a)(2). Defendants transacted their affairs in Maricopa County, Arizona. 18 U.S.C. § 1965(a).

## GENERAL ALLEGATIONS

29.     At all times relevant to this Complaint, Defendant Brent Gregory was an officer of the Plaintiff.  He was the President, Treasurer, and one of the directors of Plaintiff CPS.

30.     At all times relevant to this Complaint, Defendant Maria Gregory was also an officer of Plaintiff CPS.  She was the Secretary and one of its directors.

31.     Defendant Bonilha started working for Plaintiff CPS on March 22, 2010. He worked for CPS for five (5) years.

32.     Defendant ESG was formed on December 23, 2014.

33.     Defendants Bonilha and Brent Gregory were the founding members of Defendant ESG.

34.     Defendant Bonilha submitted his resignation to Plaintiff CPS on March 16, 2015.

35.     Defendant Bonilha's resignation letter explicitly stated that he would not compete with Plaintiff and that he would not approach Plaintiff's client base.

36.     On November 8, 2015, Defendants Bonilha and Brent Gregory were removed as members of ESG and Defendants Ancheschi and Montaldeo were added as members of ESG.

37.     On February 17, 2016, Defendant Ancheschi was removed as a member of ESG and replaced by Defendant Bonilha.

38.     In 2017, Defendant Bonilha, Ancheschi, and Montaldeo received K-1 schedules for the 2016 tax year for Defendant ESG.

39.     On July 19, 2017, Defendant Bonilha was removed as a member, leaving Defendant Montaldeo as the only remaining member of Defendant ESG.

40.     On July 17, 2019, Defendant ESG filed the paperwork with the Arizona Corporation Commission to change its name to Innovative Energy, LLC.

41.     As of November 2019, Defendant Montaldeo was the only member of Defendant Innovative.

42.     Upon information and belief, Defendant ESG through the direction of Defendants Brent Gregory (both in his personal capacity and as a Trustee of Defendant Montaldeo), Bonilha, Ancheschi, as well as Maria Gregory (as Trustee of Defendant Montaldeo) devised and executed a scheme in which Defendant ESG and/or Innovative would move CPS's employees and personnel from CPS's payroll and hire them.  Defendant ESG would then charge the employees back to Plaintiff CPS at much higher labor rates than what it would have cost for the employees to work directly for CPS.

43.     Upon information and belief, Defendant ESG, through the actions of its changing members, changed the rates and adjusted the overtime in order to maximize the revenue paid to Defendant ESG and/or Innovative and minimize the net income of CPS.

44.     Upon information and belief, as part of the ongoing scheme, Defendants ESG and Innovative, through the actions and conspiracy of its members, also interfered with Plaintiff's existing contracts with its interstate and international clients.

45.     Upon information and belief, as part of the ongoing scheme, Defendant ESG and Innovative, through the actions and conspiracy of its members, used Plaintiff's server, computers, software, desks, and facilities as its own.

46.     Upon information and belief, Defendants ESG and Innovative used Plaintiff CPS's physical address and main telephone number as its own.

47.     Upon information and belief, Defendants ESG and Innovative used Plaintiff CPS' support staff as its own.

48.     Upon information and belief, Defendants charged business development expenses to CPS and the contracts were awarded to Defendants ESG and/or Innovative.

49.     Upon information and belief, Defendants ESG and Innovative never had a legitimate business purpose.

50.     Upon information and belief and at all times relevant to this lawsuit, Defendants ESG and Innovative, through the actions of its members, were shell companies whose sole existence were to siphon, embezzle and otherwise defraud Plaintiff of its funds.

51.     Upon information and belief, Defendant ESG and/or Defendant Innovative charged Plaintiff one million, nine hundred sixty-seven thousand, nine hundred sixty-eight dollars ($ 1,967,968) between April 2015 through November 2019.

52.     Upon information and belief, Plaintiff CPS incurred Seven Hundred Fifty-Three Thousand, One Hundred Seventy-Seven Dollars ($753,177.00) in lost profits due to Defendant ESG and/or Defendant Innovative's billing practices, for services Plaintiff should have provided directly.

53.     On October 23, 2008, Defendant Brett Gregory signed an Employee Confidentiality, Work Product Assignment, Noncompetition and Non-Solicitation Agreement "Agreement" with Plaintiff CPS.

54.     Paragraph 2 of Section I, CONFIDENTIALITY/NON-DISCLOSURE, in the 2008 Agreement states:

> I agree at all times during the term of my employment and thereafter, to hold in **strictest confidence in a fiduciary capacity for the sole benefit of the Company**, all Confidential Information and, except as authorized by the Company in writing, shall take all reasonable and necessary steps and exert best commercial efforts to **NOT, at any time, either during the term of this Agreement or after its termination:** i) disclose, communicate or induce the communication to any third party any Confidential Information; ii) use or induce the use of the Confidential Information in any manner except for the benefit of the Company and to fulfill my employment

obligations; iii) use or induce the **use of any Confidential Information for my own benefit or the benefit of third parties;** iv) use or induce the use of any Confidential Information to the detriment of the Company or misuse the Confidential Information in any way.

55.     Paragraph 6 of Section I, CONFIDENTIALITY/NON-DISCLOSURE, in the 2008 Agreement states:

I acknowledge and agree that all Confidential Information is and shall be the sole and exclusive property of the Company and that any and all information developed or acquired, or **works created**, or inventions, improvements, developments, processes or methods, extensions, copyrightable works, confidential ideas, discoveries, improvements, advancements and trade secrets that may be made, conceived, invented, acquired or suggested by the parties, whether jointly or independently, **whether or not protected by patent, trademark, copyright** or trade secrets, which is a result, either directly or indirectly, of disclosure of the Confidential Information to me, **shall be the sole and exclusive property of the Company.** I further understand and agree that any and all Confidential Information and other materials or information which **I otherwise develop or create as a consequence of or through my employment** with the Company ("Work Product" as hereinafter defined) shall be the **sole and exclusive property of the Company**.

56.     Paragraph 1 of Section Ill. COVENANT NOT TO COMPETE AND NON-SOLICITATION, in the 2008 Agreement states:

The Company is a research and development engineering group that specializes in combustion and provides services and solutions energy providers. **I acknowledge** that: (a) all Confidential Information **is and shall be the sole and exclusive property of the Company** and constitutes unique and special property of the Company; (b) the Company has a legitimate business interest in protecting its Confidential Information; (c) the Company's services and products, as well as the creative processes used to develop the Company's services and products are unique and specialized items; (d) the Company's services and products are tailored to the needs of its markets, customers and potential customers; (e) the Company has a proprietary interest in its Confidential Information including

the identity of its customers and customer lists and the documents and information regarding pricing, costs and Company operations; (f) that during the course of my employment, customers of the Company will develop a trust in my ability to fully service their specialized needs and I acknowledge that this trust and the relations developed therein is a valuable Company asset which constitutes a protectable interest thereof; (g) the compilation of information regarding the Company's customers and prospective customers, and the particular needs of the its customers and prospective customers are not generally known in the industry; (h) the Confidential Information constitutes valuable trade secrets of the Company that, if disclosed, would cause considerable harm to the Company; (i) the Confidential Information, together with all other documents, information and materials regarding the Company's methods of sales, pricing, costs, marketing, processes and development are highly confidential; U) the Company has spent a substantial amount of money, time and effort in the development of the Confidential Information; (k) I am aware that the Confidential Information is not generally known within the industry or to the general public and it designed to give and does give the Company a competitive edge over others in its industry and, as such, has independent economic value; (I) the Company has and will spend a substantial amount of money, time and effort in the development of relationships with its customers; (n) the **Company would suffer irreparable injury if I compete with the Company**; and (o) my employment by the Company and the compensation paid to me by it are at least in part dependent upon earnings or profits which accrue to the Company through its ownership of the Confidential Information.

2. Restrictive Covenants. I recognize that the Company has a legitimate business interest in protecting its relationship with customers and potential customers. I further recognize, in my capacity as an employee of the Company, I will have substantial contact with the Confidential Information, proprietary assets and trade secrets belonging to the Company, and despite the confidentiality and other restrictions of this Agreement, given the nature of the Confidential Information, it is likely that such information would inevitably be used or revealed, either directly or indirectly, in any subsequent employment with a competitor of the Company in any position comparable to the employment position I currently hold with the Company. In consideration of the valuable benefits received in connection with my employment with the Company, and for other good and valuable consideration, the

receipt of which is hereby acknowledged: (a) **I agree and covenant that for a period of one (1) year following the termination of my employment, with or without cause, with or without notice, by either party, I will not directly or indirectly as an employee, consultant, investor, owner, agent, partner, director or representative, associate myself with any other entity for which the rendering of combustion related engineering solutions and services to energy providers accounts for more than fifty percent (50%) of total annual sales revenue. I specifically agree not to compete with the Company for any clients I called on for the Company in the development, production or sale of any product or service for which I was involved while employed by the Company.** I understand that the Company does and its competitors do render their services throughout Maricopa County and I therefore specifically consent to the restrictions of this Section Ill 2(a) hereof being within the city of Phoenix, Arizona, and that more narrow geographical limitations of any nature on this non-competition covenant are therefore not appropriate. I do not believe said restrictions to be an unreasonable restraint on any future employment by me. I understand and agree that this covenant not to compete is necessary to provide the Company with protection for its aforesaid Confidential Information which it now has or may acquire during my term of employment.

57.     Paragraph 1(f) of Section III. COVENANT NOT TO COMPETE AND NON-SOLICITATION, in the 2008 Agreement states:

I further agree and covenant that for a period of two (2) years following the termination of my employment, with or without cause, with or without notice, by either party, **I will not directly or indirectly**, either for myself or any other person or entity, call on, solicit or induce any actual or targeted prospective customers or clients of the Company in an attempt to have them cease to do business or to **reduce the amount of business which any such customer has customarily done or actively contemplates doing with the Company**.

58.     Paragraph 3 of IV. MISCELLANEOUS PROVISIONS, in the 2008 Agreement states:

> Employee to Devote Full Time to Company. The Employee will devote his full time, attention, and energies to the business of the Company, and, **during this employment, will not engage in any other business activity**, regardless of whether such activity is pursued for profit, gain, or other pecuniary advantage unless explicitly approved in writing by Company. Employee is not prohibited from making personal investments in any other businesses provided those investments do not require active involvement in the operation of said companies. Employee shall actively **comply with and support all Company rules and regulations**.

59.   Paragraph 11 of IV. MISCELLANEOUS PROVISIONS, in the 2008 Agreement states:

> Survival. The provisions in this Agreement that contemplate obligations on my part after I am no longer employed by the Company shall survive the cessation of my employment with the Company.

60.   On July 20, 2007, Brent Gregory signed an employment agreement with Plaintiff.

61.   Article III of the July 2007 contract states:

> "All income and/or expenses of Employee derived from, or arising out of, the Employer's business shall inure to and be considered the income and/or expenses of Employer."

62.   Article IV of the Employment Contract states that in addition to a base salary, Defendant Brent Gregory would be compensated for travel expenses, full medical and dental insurance coverage for Employee and his spouse, with standard coverage and deductibles; automobile and insurance coverage expense in an amount not to exceed $500.00 per month; cell phone; and annual contributions to a 401(k) retirement plan for the benefit of Employee.

63.     Article V of the Employment Contract stated that Defendant Brent Gregory is authorized to incur reasonable expenses for promoting the business of Plaintiff, including expenses for entertainment and travel.

64.     Article VII of the Employment Contract stated the Defendant Brent Gregory was entitled to vacation time and conference schedules which "shall not exceed two (2) weeks during each year for vacations and shall not exceed one (1) week during each year for meetings of business societies and similar meetings."

65.     From April 2015 through November 2019, Plaintiff paid Defendant Brent Gregory a total of Eight Hundred Three Thousand, Ninety-Two Dollars ($803,092.00) and/, including retirement benefits.

66.     From April 2015 through November 2019, Plaintiff paid Defendant Maria Gregory a total of Seventy-Five Thousand Four Hundred Thirty-Seven Dollars ($75,437.00), including other benefits.

67.     In 2015 Plaintiff paid Defendant Chris Bonilha a total of Twenty-One Thousand Dollars ($21,000.00) in salaries.

68.     From April 2015 through November 2019, Plaintiff paid Sixty-Six Thousand Six Hundred Seventy-Four Dollars ($66,674.00) in Medical Insurance, Medicare and Concierge Physician Benefits for Defendants Gregory.

69.     Defendant Brent Gregory used his company credit cards for unauthorized purchases and charged most of his personal expenses which were not covered by his employment contract.

70.     Upon information and belief, Plaintiff sustained damages in the amount of Nineteen Thousand Two Hundred Eighty-Three Dollars ($19,283.00) for personal expenses wrongfully incurred on behalf of Defendants Gregory.

71.     On September 30, 2019, Defendant Brent Gregory sent email informing CPS of his decision to retire.

72.     In his last few days prior to his retirement, Defendant Brent Gregory made a withdrawal from Plaintiff's bank account and took a half of a month's salary for unauthorized vacation time he claimed was owed.

73.     On June 3, 2014, Defendant Brent Gregory, along with Majed Toqan, Ryan Yamane, and Jonathan Regele, as employees of Plaintiff CPS, were granted patent number 8739511 for a can-annular combustor with staged and tangential fuel-air nozzles for use on gas turbine engines.

74.     On December 9, 2014, Defendant Brent Gregory, along with Majed Toqan, Ryan Yamane, and Jonathan Regele, as employees of Plaintiff CPS, were granted patent number 8904799 for a tangential combustor with vaneless turbine for use on gas turbine engines.

75.     On June 9, 2015, Defendant Brent Gregory, along with Majed Toqan, Ryan Yamane, and Jonathan Regele, as employees of Plaintiff CPS, were granted patent number 9052114 for a tangential annular combustor with premixed fuel and air for use on gas turbine engines.

76.   On July 28, 2015, Defendant Brent Gregory, along with Majed Toqan, Ryan Yamane, and Jonathan Regele, as employees of Plaintiff CPS, were granted patent number 9091446 for a tangential and flameless annular combustor for use on gas turbine engines.

77.   On November 10, 2015, Defendant Brent Gregory, along with Majed Toqan, Ryan Yamane, and Jonathan Regele, as employees of Plaintiff CPS, were granted patent number 9181812 for a can-annular combustor with premixed tangential fuel-air nozzles for use on gas turbine engines.

78.   Pursuant to the terms of the contract that Defendant Brent Gregory signed, Plaintiff CPS owns those patents.

79.   Pursuant to the terms of the contract, Defendant Brent Gregory is required to turn over confidential information including patents, to Plaintiff CPS.

80.   Defendant Brent Gregory has not returned the patents to Plaintiff despite requests to do so.

## COUNT I

**Violations of Federal Civil RICO—Conduct of a RICO Enterprise**

**18 U.S.C. § 1962(c)**

81.   Plaintiff incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

82.   At all relevant times, Defendants Gregory, Bonilha, Ancheschi, and Montaldeo are each "person[s]" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

83.   At all relevant times, Defendants ESG and Innovative constitute "Enterprises" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c). At all relevant

times, the ESG and Innovative were engaged in, and/or their activities affected, interstate commerce and/or foreign commerce within the meaning of 18 U.S.C. § 1962(c).

84.     Upon information and belief, RICO Defendants each violated 18 U.S.C. § 1962(c).

85.     At all relevant times, Defendant Brent Gregory, Bonilha, Ancheschi, and Montaldeo held a position in Defendants ESG and/or Innovative, as well as participated in the operation, management, and directed the affairs of Defendants ESG and/or Innovative. Upon information and belief, Defendants ESG and Innovative, as alleged herein, were operating solely to participate in the predicate acts and has its activities were solely used for racketeering activity.

86.     Upon information and belief, Defendants Gregory, Bonilha, Ancheschi, and Montaldeo, each of whom are persons associated with, or employed by, Defendant Gregory, did knowingly, willfully, and unlawfully conduct or participate, directly or indirectly, in the conduct, management, or operation of the affairs of the Defendants ESG and/or Innovative through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5), and 1962(c), through multiple instances of Mail Fraud and Wire Fraud, in violation of 18 U.S.C. §§ 1341 and 1343, and Money Laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i), and Use of the Mails and Wires to Defraud, in violation of 18 U.S.C. §§ 1341 and 1343.

87.     Upon information and belief, Defendants Gregory, Bonilha, Ancheschi, and Montaldeo devised or intended to devise a scheme to defraud Plaintiff of money, property,

and other benefits of monetary value by means of false or fraudulent pretenses and representations.

88.     For the purposes of executing their scheme, Defendants Gregory, Bonilha, Ancheschi, and Montaldeo, through Defendant ESG and/or Innovative, delivered or caused delivery of various documents and things by the U.S. mails or by private or commercial interstate carriers, or received such therefrom. For the purposes of executing their scheme, Defendants Gregory, Bonilha, Ancheschi, and Montaldeo transmitted or caused to be transmitted by means of wire communications in interstate or foreign commerce various writings, signs, and signals.

89.     Upon information and belief, in furtherance of their scheme, Defendants Gregory, Bonilha, Ancheschi, and Montaldeo used the wires and/or U.S. mails or private or commercial carriers to delivery documents and things to Plaintiffs or the Enterprises for the purposes of defrauding Plaintiff, in violation of 18 U.S.C. §§ 1341 and 1343, including, but not limited to the following:

  a.     Emails and website postings incorporating false, fraudulent and misleading statements regarding: Plaintiff CPS; directions, instructions and actions taken to deprive Plaintiff of money and property as well as other benefits.

  b.     Wirings and/or mailings between and among Defendants Gregory, Bonilha, Ancheschi, and Montaldeo concerning: the scheme to defraud Plaintiff of money and property as well as other benefits.

c.     Funds transferred between Plaintiff CPS and Defendant ESG and/or Innovative with the intent that those funds be used to promote the carrying on of Defendants' scheme to defraud Plaintiff of money and property as well as other benefits;

90.     Defendants ESG, Innovative, Gregory, Bonilha, Ancheschi, and Montaldeo used the wires and mails in interstate commerce with intent to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of an unlawful activity.

91.     Upon information and belief, Defendants ESG, Innovative, Gregory, Bonilha, Ancheschi, and Montaldeo's racketeering activities were multiple, continuous, and ongoing from April 2015 through November 2019, when the actions were discovered.

92.     Defendants ESG, Innovative, Gregory, Bonilha, Ancheschi, and Montaldeo participated in the scheme or artifice knowingly, willfully, and with the specific intent to advance their scheme to deceive or defraud Plaintiff.   Defendants knowingly and intentionally prepared documents, including but not limited to, letters, notices, invoices, and other documents, and then knowingly and with the intent to deceive Plaintiff, caused those documents to be sent to Plaintiff or entities that would further Defendants' scheme to defraud.

93.     Upon information and belief, Defendants have, on multiple occasions, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducted or attempt to conduct a financial transaction which in fact involves the proceeds of specified unlawful activity with the intent to promote

19

the carrying on of specified unlawful activity, including, but not limited to, violations of 18 U.S.C. §§ 1341 and 1343. RICO Defendants have, therefore, violated 18 U.S.C § 1956(a)(1)(A)(i).

94.     Defendants have engaged in multiple predicate acts, as described in the above. The conduct of the Defendants constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

95.     Defendants' violations of federal law as set forth herein, each of which directly and proximately injured Plaintiff, constitutes a continuous course of conduct, which was intended to defraud Plaintiff of money and property through false representations, fraud, deceit, and other improper and unlawful means.

96.     Therefore, said violations were a part of racketeering activity as defined by 18 U.S.C. §§ 1961(1) and (5).

97.     Plaintiff was financially damaged by reason of the Defendants' violation of 18 U.S.C. § 1962(c).

98.     The injuries to Plaintiff were a direct, proximate, and reasonably foreseeable result of the Defendants' violation of 18 U.S.C. § 1962.

99.     Plaintiff is the ultimate victim of Defendants' unlawful enterprises.

100.    Plaintiff has been and will continue to be damaged in an amount to be determined at trial.

101.    Pursuant to 18 U.S.C. § 1962(c), Plaintiff is entitled to recover treble damages plus costs and attorneys' fees from Defendants as well as any other relief authorized by statute.

## COUNT II

**Violations of Federal Civil RICO— Acquisition and Maintenance of an Interest in and**

**Control of an Enterprise Engaged in a Pattern of Racketeering Activity**

**18 U.S.C. §§ 1961(5), 1962(b)**

102.   Plaintiff repeats and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

103.   Upon information and belief, during the period of April 2015 through November 2019, all Defendants did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts that are itemized in the RICO laws at 18 U.S.C. §§ 1961(1)(A) and (B) and did so in violation of the RICO law at 18 U.S.C. § 1962(b) (prohibited activities).

104.   By virtue of the predicate acts described in this Complaint, including without limitations: laundering of monetary instruments, engaging in monetary transactions improperly derived from unlawful activity, Defendants transferred, received, furthered and supplied financing and income that was derived, both directly and indirectly, from a pattern of racketeering activity in which each of them participated as a principal and used and invested, both directly and indirectly, such income and the proceeds of such income, in establishing, operating and furthering other illegal enterprises in violation of 18 U.S.C. § 1962(a).

105.   As a direct and proximate result of Defendants' violation of 18 U.S.C. § 1962(a), Plaintiff suffered the loss of valuable property, financial services and support, and suffered other business and pecuniary damages.

106.   Plaintiff further alleges that Defendants did commit two (2) or more of the offenses itemized above in a manner which they calculated and premeditated intentionally to threaten continuity, i.e. a continuing threat of their respective racketeering activities, also in violation of the RICO law at 18 U.S.C. § 1962(b) supra.

107. 18 U.S.C. § 1964(c) defines "racketeering activity" as follows: (1) "racketeering activity" means (B) any act which is indictable under any of the following provisions of title 18, United States Code: Section 659 (relating to theft from interstate shipment) if the act indictable under section 659 is felonious, sections 891–894 (relating to extortionate credit transactions), section 1029 (relating to fraud and related activity in connection with access devices), section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1344 (relating to financial institution fraud), section 1351 (relating to fraud in foreign labor contracting), [1] section 1951 (relating to interference with commerce, robbery, or extortion), section 1952 (relating to racketeering), section 1956 (relating to the laundering of monetary instruments), or section 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity).

108.   Plaintiff demands that judgment be entered against Defendants, each and every one of them, jointly and severally, including an award of trebled damages as consistent with 18 U.S.C. § 1964(c), compensatory and actual damages, reasonable attorneys' fees, pre-judgment interest, post-interest, costs, and an award that this Court deems just and proper.

## COUNT III

**Violations of Federal Civil RICO— Conduct and Participation in a RICO Enterprise**

**through a Pattern of Racketeering Activity:**

**18 U.S.C. §§ 1961(5), 1962(c) 225.**

109.    Plaintiff repeats and re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein, and specifically repeats and re-allege the allegations under the Second Cause of Action concerning RICO liability.

110.    All Defendants did associate with a RICO enterprise of individuals who were associated in fact and who engaged in, and whose activities did affect, interstate and foreign commerce.

111.    Likewise, all Defendants did conduct and/or participate, either directly or indirectly, in the conduct of the affairs of said RICO enterprise through a pattern of racketeering activity, all in violation of 18 U.S.C. §§ 1961(4), (5), (9), and 1962(c).

112.    During the period of April 2015 through November 2019, all Defendants did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts that are itemized in the RICO laws at 18 U.S.C. §§ 1961(1)(A) and (B), and did so in violation of the RICO law at 18 U.S.C. § 1962(c) (prohibited activities).

113.    Plaintiff further alleges that all Defendants did commit two (2) or more of the offenses itemized above in a manner which they calculated and premeditated intentionally to threaten continuity, i.e. a continuing threat of their respective racketeering activities, also in violation of the RICO law at 18 U.S.C. § 1962(c).

114.   Plaintiff demands that judgment be entered against Defendants, each and every one of them, jointly and severally, including an award of trebled damages as consistent with 18 U.S.C. § 1964(c), compensatory and actual damages, reasonable attorneys' fees, pre-judgment interest, post-interest, costs, and an award that this Court deems just and proper.

## COUNT IV

**Violations of Federal Civil RICO— Conspiracy to Engage in a Pattern of Racketeering Activity**

**18 U.S.C. §§ 1961(5), 1962(d) 231**

115.   Plaintiff repeats and re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein, and specifically repeat and re-allege the allegations under the Second Cause of Action concerning RICO liability.

116.   All Defendants did conspire to acquire and maintain an interest in a RICO enterprise engaged in a pattern of racketeering activity, in violation of 18 U.S.C. §§ 1962(b) and (d).

117.   During the period of April 2015 through November 2019, all Defendants did cooperate jointly and severally in the commission of two (2) or more of the predicate acts that are itemized at 18 U.S.C. §§ 1961(1)(A) and (B), in violation of 18 U.S.C. § 1962(d).

118.   Plaintiff further alleges that all Defendants did commit two (2) or more of the offenses itemized above in a manner which they calculated and premeditated intentionally to threaten continuity, i.e. a continuing threat of their respective racketeering activities, also in violation of 18 U.S.C. § 1962(d) (prohibited activities).

119.   Plaintiff demands that judgment be entered against Defendants, each and every one of them, jointly and severally, including an award of trebled damages as consistent with 18 U.S.C. § 1964(c), compensatory and actual damages, reasonable attorneys' fees, pre-judgment interest, post-interest, costs, and an award that this Court deems just and proper.

## COUNT V

### Conversion

### (All Defendants)

120.   Plaintiff incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

121.   "Conversion is . . . an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Mobile Disc. Corp. v. Schumacher*, 139 Ariz. 15, 17, 676 P.2d 649, 651 (App. Div. 2, 1983); see also *Focal Point, Inc. v. U-Haul Co. of Ariz., Inc.*, 155 Ariz. 318, 319-20, 746 P.2d 488, 489-90 (Ariz. App. Div. 1 1986); RESTATEMENT (SECOND) OF TORTS § 222(A)(1).

122.   Defendants Brent Gregory and Christopher Bonilha, as principles of Defendant ESG, have deprived Plaintiff of, and interfered with its rights to, to funds in amount of Seven Hundred Fifty-Three Thousand, One Hundred Seventy-Seven Dollars ($753,177.00), by unlawful and fraudulent means, refusing and failing to return the funds to Plaintiff.

123.     Defendants Maria Gregory, Evellyn Ancheschi, and the Gregorys as Trustees of the Montaldeo have received unlawfully obtained funds from Defendant ESG and/or Innovative, to which they are not entitled.

124.     Defendants have no right to retain said unlawfully obtained funds, which are lawfully the property of Plaintiff.

125.     Defendants are obligated to return said funds to Plaintiff.

126.     Upon information and belief, Defendants have converted the subject funds for his/her/their/its own benefit and use.

127.     Defendants' actions constitute conversion of Plaintiff's property.

128.     As a direct and proximate cause of Defendants conversions, Plaintiff suffered and will continue to suffer harm and damages in an amount to be proven at the time of trial.

129.     The imposition of a constructive trust over all monies converted from Plaintiff and any property purchased therewith and/or proceeds thereof, is appropriate.

## COUNT V

### Fraud

### (All Defendants)

130.     Plaintiff incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

131.     Upon information and belief, Defendants Gregory, Bonilha, Ancheschi, and Montaldeo Trust knew of the scheme perpetrated by Defendant ESG and Defendant Innovative and the funds each Defendant received were unlawfully obtained pursuant to that scheme.

132.   Upon information and belief, Plaintiff alleges that Defendants, and each of them, conspired for the specific purpose of depriving Plaintiff of its funds and to defraud Plaintiff, all with malice, ill will, and an evil mind toward Plaintiff.

133.   Plaintiff has been injured by loss of use of its funds. Plaintiff seeks compensatory damages under separate causes of action as addressed in this Complaint, as more fully set forth therein.

134.   These acts were malicious, fraudulent, and oppressive, justifying an award of punitive damages so that Defendants, each of them, will not engage in such conduct in the future and to make an example of them.

## COUNT VI

### Civil Conspiracy

### (Defendants Gregory, Bonilha and Ancheschi)

135.   Plaintiff incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

136.   For a civil conspiracy to occur two or more people must agree to accomplish an unlawful purpose or to accomplish a lawful object by unlawful means, causing damages." *Baker v. Stewart Title & Trust of Phoenix*, 197 Ariz. 535, 542, 5 P.3d 249, 256 ¶ 30 (App.2000) (quoting *Rowland v. Union Hills Country Club*, 157 Ariz. 301, 306, 757 P.2d 105, 110 (1988)); see also RESTATEMENT (SECOND) OF TORTS § 876. *Wells Fargo Bank v. Arizona Laborers*, 201 Ariz. 474, 38 P.3d 12 (2002).

137.   Liability for civil conspiracy requires that two or more individuals agree and thereupon accomplish "an underlying tort which the alleged conspirators agreed to

commit." *Baker* at 545, 5 P.3d at 259; *Wells Fargo Bank v. Arizona Laborers*, 201 Ariz. 474, 38 P.3d 12 (2002).

138.    At various times throughout Defendant ESG's useful life, Defendants Gregory, Bonilha and Ancheschi were all listed, at least at one time, as members/managers of the LLC.

139.    By virtue of his/her position as member/manager of the LLC, Defendants Gregory, Bonilha, and Ancheschi had actual knowledge of the scheme Defendant ESG had hatched to defraud Plaintiff of its rightful funds.

140.    Defendants Gregory, Bonilha, and Ancheschi actually received unlawfully obtained funds distributed from Defendant ESG, knowing the funds were received from the unlawful conspired scheme in which the ultimate goal of Defendant ESG was to defraud Plaintiff of its rightful property.

141.    Plaintiff was financially harmed due to Defendants Gregory, Bonilha, and Ancheschi's unlawful conspiracy to commit intentional and fraudulent actions against Plaintiff's interests and Defendants Gregory, Bonilha, and Ancheschi's actions to act upon the conspiracy.

142.    Defendants Gregory, Bonilha, and Ancheschi's actions were a substantial factor in causing Plaintiff's harm.

143.    Plaintiff is entitled to recover damages resulting naturally and directly from the civil conspiracy in an amount to be proven at trial.

## COUNT VII

### Fraudulent Concealment

### (Defendant Brent Gregory and Defendant Bonilha)

144.   Plaintiff incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

145.   Defendant Brent Gregory and Defendant Bonilha intentionally failed to disclose certain facts to Plaintiff.

146.   Defendant Brent Gregory and Defendant Bonilha had a duty to provide true, accurate, and/or complete information to prevent a substantial and foreseeable risk of injury to Plaintiff.

147.   Instead of reporting and disclosing true and correct financial records to Plaintiff, Defendant Brent Gregory and Defendant Bonilha breached their duties to Plaintiff by providing vague, incomplete, inconsistent, and fraudulent financial information.

148.   Plaintiff did not know of the concealed facts.

149.   Defendant Brent Gregory and Defendant Bonilha intended to deceive and defraud Plaintiff by concealing the facts.

150.   Defendant Brent Gregory and Defendant Bonilha were aware that they had a legal obligation to provide true and correct information and that Plaintiff would rely on the information provided.

151.   Had the omitted and fraudulent information been disclosed, Plaintiff reasonably would have behaved differently.

152.    Defendant Brent Gregory and Defendant Bonilha's concealments were a substantial factor in causing Plaintiff's harm.

153.    As a direct and proximate cause of Defendant Brent Gregory and Defendant Bonilha's concealments, Plaintiff suffered and will continue to suffer harm and damages in an amount to be proven at the time of trial.

## COUNT VIII

### Intentional Interference with a Business Relationship

### (Defendant Brent Gregory and Bonilha)

154.    Plaintiff incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

155.    Arizona law and the Restatement recognize that an action for damages may be based on an interference with a mere but valid expectation of a business relationship. *Hadley v. Southwest Props., Inc.*, 116 Ariz. 503, 506, 570 P.2d 190, 193 (1977); *Bar J Bar Cattle Co. v. Pace*, 158 Ariz. 481, 486, 763 P.2d 545, 550 (App.1988) (citing Restatement § 766B, cmt. c); *Fillmore v. Maricopa Water Processing Systems, Inc.*, 120 P.3d 697, 211 Ariz. 269 (Ariz. 2005).

156.    The first element of the tort of "intentional interference with a business relationship" or expectancy is the existence of a valid contractual relationship or business expectancy.

157.    Plaintiff had contracts with its existing customers, which Defendant Brent Gregory and Defendant Bonilha had knowledge of.

158.    The second element of the tort of "intentional interference with a business relationship" or expectancy is knowledge of the relationship or expectancy on the part of the interfering party.

159.    Defendant Brent Gregory and Defendant Bonilha knew of the contracts Plaintiff had with its existing customers.

160.    The third element of the tort of "intentional interference with a business relationship" or expectancy is an intentional interference inducing or causing a breach or termination of the relationship or expectancy.

161.    Defendant Brent Gregory and/or Defendant Bonilha intentionally interfered with these contracts by inserting Defendant ESG and/or Defendant Innvoative instead of Plaintiff CPS.

162.    The fourth element of the tort of "intentional interference with a business relationship" or expectancy is resultant damage to the party whose relationship or expectancy has been disrupted.

163.    Plaintiff was damaged by a loss of income based upon the fraudulent scheme.

164.    The fifth element of the tort of "intentional interference with a business relationship" or expectancy is an improper "motive or means" in the interference.

165.    Upon information and belief, Defendant Brent Gregory and Defendant Bonilha formed Defendant ESG with the intention of adding a layer of legitimacy to the scheme to defraud and embezzle funds from Plaintiff CPS.

166.    Plaintiff is entitled to recover damages resulting naturally and directly from the interference in an amount to be proven at trial.

## COUNT IX

### Aiding and Abetting

### (Defendants Maria Gregory, Bonilha, Ancheschi)

167.   Plaintiff incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

168.   Arizona recognizes aiding and abetting as embodied in Restatement § 876(b), that a person who aids and abets a tortfeasor is himself liable for the resulting harm to a third person. *Gemstar Ltd. v. Ernst & Young*, 183 Ariz. 148, 159, 901 P.2d 1178, 1189 n. 7 (App.1995), vacated on other grounds, 185 Ariz. 493, 917 P.2d 222 (1996); *Gomez v. Hensley*, 145 Ariz. 176, 178, 700 P.2d 874, 876 (App.1984); see also RESTATEMENT (SECOND) OF TORTS § 876(b) (1977); *Wells Fargo Bank v. Arizona Laborers*, 201 Ariz. 474, 38 P.3d 12 (Ariz. 2002).

169.   "[A]iding and abetting liability does not require the existence of, nor does it create, a pre-existing duty of care.... Rather, aiding and abetting liability is based on proof of a scienter ... the defendants must know that the conduct they are aiding and abetting is a tort." *Wells Fargo Bank v. Arizona Laborers*, 201 Ariz. 474, 38 P.3d 12 (Ariz. 2002).

170.   Claims of aiding and abetting tortious conduct require proof of three elements: (1) the primary tortfeasor must commit a tort that causes injury to the plaintiff; (2) the defendant must know that the primary tortfeasor's conduct constitutes a breach of duty; and (3) the defendant must substantially assist or encourage the primary tortfeasor in the achievement of the breach.   *Gomez*, 145 Ariz. at 178, 700 P.2d at 876 (citing

32

RESTATEMENT (SECOND) OF TORTS § 876(b)). *Wells Fargo Bank v. Arizona Laborers*, 201 Ariz. 474, 38 P.3d 12 (Ariz. 2002).

171.    The primary tortfeasor, Defendant Brent Gregory, committed a number of tortious acts towards Plaintiff which was designed to defraud and scheme Plaintiff of its funds and property, as addressed in this Complaint.

172.    Defendant Maria Gregory, Defendant Bonilha, and Defendant Ancheschi knew of the scheme perpetrated by Defendant Brent Gregory under the guise of business for Defendant ESG and/or Defendant Innovative.

173.    "Because aiding and abetting is a theory of secondary liability, the party charged with the tort must have knowledge of the primary violation, and such knowledge may be inferred from the circumstances." *See In re American Continental Corp./Lincoln Sav. and Loan Sec. Litig.*, 794 F.Supp. 1424, 1436 (D.Ariz.1992); *Wells Fargo Bank v. Arizona Laborers*, 201 Ariz. 474, 38 P.3d 12 (Ariz. 2002).

174.    "Actual and complete knowledge of the details of the primary tort may not be necessary in all cases; the knowledge requirement may be satisfied by showing general awareness of the primary tortfeasor's fraudulent scheme." *Dawson v. Withycombe*, 216 Ariz. 84, 102, P 50, 163 P.3d 1034, 1052 (App. Div. 1, 2007).

175.    Defendant Maria Gregory, Defendant Bonila, and Defendant Ancheschi actively encouraged and substantially assisted Defendant Brent Gregory in the continued efforts to defraud Plaintiff of its funds through their combined efforts to continue the legitimacy of Defendants ESG and/or Innovative and to continue to cover up the known existence of the ESG's original scheme.

176.   Plaintiff was financially harmed due to Defendants Gregory, Bonilha, and Ancheschi's unlawful, intentional, and fraudulent actions against Plaintiff's interests.

177.   Defendants Gregory, Bonilha, and Ancheschi's actions were a substantial factor in causing Plaintiff's harm.

178.   Plaintiff is entitled to recover damages resulting naturally and directly from the harm in an amount to be proven at trial.

## COUNT X

### Breach of Fiduciary Duty

### (Defendants Brent and Maria Gregory)

179.   Plaintiff incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

180.   The relationship[s] between a corporation and its directors and officers, employees, agents and consultants or advisors are fiduciary relationships. *AMERCO v. Shoen*, 184 Ariz. 150, 907 P.2d 536 (App. 1995).

181.   At all times relevant to this litigation, Defendants Brent and Maria Gregory owed Plaintiff a fiduciary duty as officers and directors of Plaintiff.

182.   Defendants Gregory breached that duty on more than one occasion by failing to place Plaintiff's financial interests above their own financial interests by converting Plaintiff's funds for their own purpose.

183.   Such breaches of their fiduciary duties were the actual and proximate cause of harm to Plaintiff.

184.    Plaintiff was financially harmed due to Defendants Gregory's fiduciary breaches.

185.    Defendants Gregory's breaches of their fiduciary duties were a substantial factor in causing Plaintiff's harm.

186.    Accordingly, Defendants Gregory are liable for damages to Plaintiff, the exact amount to be proven at trial, but are expected to be in excess of Nine Hundred Sixty-Four Thousand Four Hundred Eighty-Six Dollars ($964,486.00).

187.    According to Arizona case law, damages for breaches in fiduciary duties can include punitive damages.

## COUNT XI

### Breach of "The 'Business Opportunity' Doctrine"

### (Defendant Brent Gregory)

188.    Plaintiff incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

189.    The 'business opportunity' doctrine holds that a director or officer may not seize for himself, to the detriment of his company, business opportunities in the company's line of activities in which it has an interest or prior claim. *Tovrea Land & Cattle Co. v. Linsenmeyer*, 412 P.2d 47, 100 Ariz. 107 (Ariz. 1966).

190.    A breach of the 'business opportunity' doctrine depends upon whether the corporation has a legally recognized interest, actual or in expectancy, in the property, or whether the transaction by the director or officer may hinder or defeat the plans and purposes of the corporation in carrying on or developing its legitimate and usual business."

*Zeckendorf v. Steinfeld*, 12 Ariz. 245, 100 P. 784; *Tovrea Land & Cattle Co. v. Linsenmeyer*, 412 P.2d 47, 100 Ariz. 107 (Ariz. 1966).

191.    Plaintiff had a legally recognized interest in its contracts and funds from those contracts.

192.    Defendant Brent Gregory, as an officer and director of CPS, was aware of those contracts.

193.    Defendant Brent Gregory's action to interfere with those contracts and to switch them over to Defendant ESG and/or Innovative was a substantial interference with Plaintiff's legally recognized interests.

194.    Defendant Brent Gregory's actions substantially hindered Plaintiff's plans and purposes in carrying on or developing its legitimate and usual business.

195.    Plaintiff was financially harmed due to Defendant Brent Gregory's unlawful, intentional, and fraudulent actions against Plaintiff's interests.

196.    Defendant Brent Gregory's actions were a substantial factor in causing Plaintiff's harm.

197.    Plaintiff is entitled to recover damages resulting naturally and directly from the harm in an amount to be proven at trial.

## COUNT XII

### Breach of Contract – Non Compete Agreements

### (Defendant Brent Gregory and Bonhila)

198.    Plaintiff incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

36

199.    Plaintiff and Defendant Brent Gregory entered into an employment contract in July 2007 regarding Defendant Brett Gregory's employment with Plaintiff CPS.

200.    Plaintiff and Defendant Brent Gregory entered into a non-disclosure agreement on October 23, 2008, regarding certain obligations Defendant Brent Gregory had to Plaintiff.

201.    On March 16, 2015, Defendant Bonhila agreed not to compete upon his resignation.

202.    Specifically, Defendants Brent Gregory and Bonhila wrongfully breached said their respective agreement by forming and maintaining a competing business, and subsequently competing with Plaintiff.

203.    Additionally, Defendants Brent Gregory and Bonhila has held themselves out as being a member of Defendant ESG, that said business is in direct competition with Plaintiff.

204.    Wherefore, Plaintiff has and will sustain an irreparable financial injury due to loss of business due to said wrongful competition in violation of the terms of the agreements.

205.    Defendants Brent Gregory and Bonhila's breach of the non-compete clause was a substantial factor in causing Plaintiff's harm.

206.    Accordingly, Defendants Brent Gregory and Bonhila are liable in damages to Plaintiff, the exact amount to be proven at trial, but are expected to be in excess of Seven Hundred Fifty-Three Thousand, One Hundred Seventy-Seven Dollars ($753,177.00).

207.     Because this matter arises out of a contract action, the prevailing party is entitled to attorneys' fees and costs pursuant to A.R.S. § 12-341 and A.R.S. § 12-341.01.

## COUNT XIII

### Breach of Contract

### (Defendant Brent Gregory)

208.     Plaintiff incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

209.     Plaintiff and Defendant Brent Gregory entered into an employment contract in July 2007 regarding Defendant Brett Gregory's employment with Plaintiff CPS.

210.     Plaintiff and Defendant Brent Gregory entered into a valid, enforceable, and binding employment contract.

211.     Defendant Brent Gregory breached the contract by improperly and illegally kept income derived from, or arising out of, the Plaintiff's business.

212.     Defendant Brent Gregory breached the contract by submitting and subsequently accepted improperly submitted travel expenses, medical and dental insurance coverage, 401K benefits, and improper expenses which were expensed to Plaintiff.

213.     Defendant Brent Gregory also breached the contract taking excess vacation time in excess of two (2) weeks.

214.     As a direct and proximate result of Defendant Brent Gregory's breach of contract, Plaintiff has been damaged in the amount in excess of Eight Hundred Eighty-Nine and Forty-Nine Dollars ($884,049.00).

215.    Plaintiff is entitled to the recovery of its attorneys' fees and costs incurred in pursuing this action pursuant to A.R.S. § 12-341 and A.R.S. § 12-341.01.

## COUNT XIV

### (Breach of the Covenant of Good Faith and Fair Dealing)

### (Defendant Brent Gregory)

216.    Plaintiff hereby incorporates each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

217.    In Arizona, a party to a contract has an implied duty to act fairly and in good faith which is implied by law and need not be in writing.

218.    This duty requires that neither party do anything that prevents the other party from receiving the benefits of their agreement.

219.    As set forth in greater detail above, Defendant Brent Gregory breached the duty of good faith and fair dealing by denying Plaintiff the benefit of the employment contract and the nondisclosure agreement that the parties entered into.

220.    Plaintiff is entitled to recover damages resulting naturally and directly from the breach in an amount to be proven at trial.

## COUNT XV

### (Unjust Enrichment)

### (All Defendants)

221.    Plaintiff re-alleges the allegations set forth in Paragraphs above and incorporates same herein by reference.

222.   At all times relevant to this litigation, Defendants owed a legal duty to Plaintiff to not unfairly or unduly take advantage of Plaintiff or commit wrongful acts in order to unjustly enrich him/her/their/itself at Plaintiff's expense or at the expense of Plaintiff's property or financial interests.

223.   Defendants unjustly enriched him/her/their/itself by wrongfully converting, taking, and utilizing Plaintiff's property and financial interests.

224.   Specifically, Defendants converted and otherwise defrauded Plaintiff of over One Million Seven Hundred Thirty-Eight Thousand Six Hundred Sixty-Two Dollars ($1,738,662) through his/her/their/its wrongful actions.

225.   Additionally, Defendants have refused to refund the funds to Plaintiff to rectify Defendants' actions.

226.   Defendants will be unjustly enrichment by retaining the funds rightfully belonging to Plaintiff.

227.   Defendants' unlawfully and fraudulent actions were the actual and proximate cause of harm to Plaintiff.

228.   Accordingly, Defendants are liable for damages to Plaintiff in an exact amount to be proven at trial.

## Declaratory Judgment – Return of Intellectual Property

### (Defendant Brent Gregory)

229.   Plaintiff hereby incorporates each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

230.    Plaintiff seeks declaratory relief pursuant to the Uniform Declaratory Judgment Act A.R.S. § 12-1831, et al. The rights, status, and legal relations of the parties are affected by the dispute described herein.

231.    Defendant Brent Gregory signed an Employee Confidentiality, Work Product Assignment, Noncompetition and Non-Solicitation Agreement "Agreement" with Plaintiff CPS in which he acknowledged and agree that all works created, whether patented, trademarked, or copyrighted, were the sole and exclusive property of Plaintiff.

232.    Defendant Brent Gregory is part owner of five (5) patents registered and co-owned with Plaintiff CPS that were developed during Brent Gregory's employment with CPS.

233.    Despite Plaintiff's request to Defendant Brent Gregory to perform the necessary tasks to sign over and transfer the patents to Plaintiff, Defendant Brent Gregory has refused to do so.

234.    Plaintiff seeks judicial assistance and an order requiring Defendant Brent Gregory to transfer the five (5) different patents, described herein, to Plaintiff pursuant to the Agreement he signed on October 23, 2008.

235.    A judicial declaration is necessary and appropriate at this time so that Plaintiff may ascertain with certainty its rights and duties.

236.    Pursuant to A.R.S. 12-1831, et seq., A.R.S. § 47-2302, and U.C.C. Section 2-302, Plaintiff is entitled to a declaratory judgment that the five (5) patents co-owned by Defendant Brent Gregory be transferred to Plaintiff.

237.    Plaintiff is entitled to an award of reasonable attorney's fees pursuant to A.R.S. 12-341.01.

**FURTHER REQUESTED RELIEF:**

TEMPORARY RESTRAINING ORDER

238.    Plaintiff re-alleges the allegations set forth in Paragraphs above and incorporates same herein by reference.

239.    Plaintiff has an immediate need for a temporary restraining order to prevent immediate and irreparable harm caused by the dissipation of assets by Defendants without which Plaintiff could not be adequately compensated.

240.    Plaintiff has an immediate need to:

(a) enjoin all Defendants from disposing of any of the Seven Hundred Fifty-Three Thousand, One Hundred Seventy-Seven Dollars ($753,177.00) that Defendants wrongfully deprived Plaintiff of through his/her/their/its actions;

(b) requires Defendants to identify with specificity where he/she/they/it has deposited said funds; and

(c) enjoin Defendants from withdrawing or otherwise transferring or dissipating said funds and the contents of any and all such accounts until such time as the Seven Hundred Fifty-Three Thousand, One Hundred Seventy-Seven Dollars ($753,177.00) is repaid to Plaintiff.

241.    Plaintiff has an immediate need to:

(a) enjoin Defendants Gregory from disposing of any of the Nine Hundred Sixty-Four Thousand and Four Hundred Eighty-Six Dollars ($964,486.00)

that Defendants Gregory wrongfully deprived Plaintiff of through his/her/their/its actions;

(b) requires Defendants Gregory to identify with specificity where he/she/they/it has deposited said funds; and

(c) enjoin Defendants Gregory from withdrawing or otherwise transferring or dissipating said funds and the contents of any and all such accounts until such time as the Nine Hundred Sixty-Four Thousand and Four Hundred Eighty-Six Dollars ($964,486.00) is repaid to Plaintiff.

242. The greater injury will result from refusing to grant a temporary restraining order than by granting it.

243. The issuance of a temporary restraining order will not substantially harm any other interested persons.

244. The issuance of a temporary restraining order will restore the parties to their status as it existed prior to the wrongful conduct of Defendants and/or will enable such restoration to take place.

245. Plaintiff has a substantial likelihood of prevailing on the merits.

246. The temporary restraining order sought is reasonably suited to abate all of Defendants' unjust receipt and retention of the Seven Hundred Fifty-Three Thousand, One Hundred Seventy-Seven Dollars ($753,177.00) obtained pursuant to his/her/their/its wrongful and unlawful conduct.

247. The temporary restraining order sought is reasonably suited to abate Defendant Gregorys' unjust receipt and retention of the Nine Hundred Sixty-Four

Thousand and Four Hundred Eighty-Six Dollars ($964,486.00) obtained pursuant to his/her/their/its wrongful and unlawful conduct.

248.   The temporary restraining order will not adversely affect the public interest.

PRELIMINARY INJUNCTIVE RELIEF

249.   Plaintiff re-alleges the allegations set forth in Paragraphs above and incorporates same herein by reference.

250.   Plaintiff has an immediate need for injunctive relief to prevent immediate and irreparable harm caused by the dissipation of assets by Defendant without which Plaintiff could not be adequately compensated.

251.   Plaintiff has an immediate need to:

(a)   enjoin Defendants from disposing of any of the Seven Hundred Fifty-Three Thousand, One Hundred Seventy-Seven Dollars ($753,177.00) that Defendants wrongful and unlawfully acquired at Plaintiff's expense;

(b)   enjoin Defendants Gregory from disposing of any of the Nine Hundred Sixty-Four Thousand and Four Hundred Eighty-Six Dollars ($964,486.00) that Defendants wrongful and unlawfully acquired at Plaintiff's expense;

(c)   enjoin Defendants Gregory from withdrawing or otherwise transferring or dissipating said funds and the contents of any and all such accounts until such time as the Seven Hundred Fifty-Three Thousand, One Hundred Seventy-Seven Dollars ($753,177.00) is repaid to Plaintiff;

(d)   enjoin Defendants from withdrawing or otherwise transferring or dissipating said funds and the contents of any and all such accounts until such time as the Nine Hundred Sixty-Four Thousand and Four Hundred Eighty-Six Dollars ($964,486.00) is repaid to Plaintiff; and

(e)   require Defendants to identify with specificity where he/she/they/it has deposited said funds.

252.   The greater injury will result from refusing to grant injunctive relief than by granting it.

253.   The issuance of injunctive relief will not substantially harm any other interested persons.

254.   The issuance of injunctive relief will restore the parties to their status as existed prior to the Defendants' wrongful conduct and/or will enable such restoration to take place.

255.   Plaintiff has a substantial likelihood of prevailing on the merits.

256.   The injunctive relief sought is reasonably suited to abate Defendants' unjust enrichment.

257.   The injunctive relief will not adversely affect the public interest.

**PERMANENT INJUNCTIVE RELIEF**

258.   Plaintiff re-alleges the allegations set forth in Paragraphs above and incorporates same herein by reference.

259.   Plaintiff has an immediate need for injunctive relief to prevent immediate and irreparable harm caused by the dissipation of assets by Defendants without which Plaintiff could not be adequately compensated.

260.   Plaintiff has an immediate need to:

(a)    enjoin Defendants from disposing of any of the Seven Hundred Fifty-Three Thousand, One Hundred Seventy-Seven Dollars ($753,177.00) that Defendants wrongful and unlawfully acquired at Plaintiff's expense;

(b)    enjoin Defendants Gregory from disposing of any of the Nine Hundred Sixty-Four Thousand and Four Hundred Eighty-Six Dollars ($964,486.00) that Defendants wrongful and unlawfully acquired at Plaintiff's expense;

(c)    enjoin Defendants from withdrawing or otherwise transferring or dissipating said funds and the contents of any and all such accounts until such time as the Seven Hundred Fifty-Three Thousand, One Hundred Seventy-Seven Dollars ($753,177.00) is repaid to Plaintiff;

(d)    enjoin Defendants Gregory from withdrawing or otherwise transferring or dissipating said funds and the contents of any and all such accounts until such time as the Nine Hundred Sixty-Four Thousand and Four Hundred Eighty-Six Dollars ($964,486.00) is repaid to Plaintiff; and

(e)    require Defendants to identify with specificity where he/she/they/it has deposited said funds.

261. The greater injury will result from refusing to grant injunctive relief than by granting it.

262. The issuance of injunctive relief will not substantially harm any other interested persons.

263. The issuance of injunctive relief will restore the parties to his/her/their/its status as existed prior to Defendants' unjust enrichment and/or will enable such restoration to take place.

264. Plaintiff has a substantial likelihood of prevailing on the merits.

265. The injunctive relief sought is reasonably suited to abate Defendants' unjust enrichment.

266. The injunctive relief will not adversely affect the public interest.

(Constructive Trust – All Defendants)

267. As a proximate result of the Defendants fraudulent misrepresentations, concealments, conversion, and otherwise wrongful conduct as alleged herein, Plaintiff was financially harmed.

268. Defendants' actions were a substantial factor in causing Plaintiff's harm.

269. By reason of the fraudulent and otherwise wrongful manner in which the Defendants obtained Plaintiff's property and his/her/their/its alleged right, claim or interest in and to Plaintiff's property, Defendants, and each of them, have no legal or equitable right, claim or interest therein, but, instead, Defendants are involuntary trustees holding said property and profits therefrom in constructive trust for Plaintiff CPS with the duty to convey the same to Plaintiff forthwith.

(Punitive Damages – All Defendants)

270.   Plaintiff incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

271.   At all relevant times, Defendants owed Plaintiff a duty to act with due care and regard for Plaintiff's rights and interests, including Plaintiff's property and financial interests.

272.   Defendants breached that duty of due care on more than one occasion and such breaches constitute outrageous conduct and reckless disregard of the rights and interests, including property and financial interests, of Plaintiff.

273.   Defendants' outrageous conduct towards Plaintiff was done with malice or bad motives or reckless indifference to Plaintiff's interests.

274.   Accordingly, Defendants are liable for punitive damages to Plaintiff in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays for judgment against Defendants Energy Service Group, LLC, Innovative Energy, LLC, Brent Gregory, Maria Gregory, Christopher Bonilha, Evellyn Ancheschi, and Brent Allen Gregory and Maria Rosario Gregory, as Trustees of the Montaldeo Revocable Trust established on July 25, 2012, jointly and severely, as follows:

A. Enjoin Defendants, both temporarily and permanently, from disposing of any of the Seven Hundred Fifty-Three Thousand, One Hundred Seventy-Seven Dollars ($753,177.00) funds that were unlawfully taken from Plaintiff;

48

**B.** Enjoin Defendants Gregory, both temporarily and permanently, from disposing of any of the Nine Hundred Sixty-Four Thousand and Four Hundred Eighty-Six Dollars ($964,486.00) funds that were unlawfully taken from Plaintiff;

**C.** Require Defendants to identify with specificity where he/she/they have deposited said funds;

**D.** Enjoin Defendants, both temporarily and permanently, from withdrawing or otherwise transferring or dissipating said funds and the contents of any and all such accounts until such time as the Seven Hundred Fifty-Three Thousand, One Hundred Seventy-Seven Dollars ($753,177.00) in unlawfully obtained funds are repaid to Plaintiff with interest;

**E.** Enjoin Defendants Gregory, both temporarily and permanently, from withdrawing or otherwise transferring or dissipating said funds and the contents of any and all such accounts until such time as the Nine Hundred Sixty-Four Thousand and Four Hundred Eighty-Six Dollars ($964,486.00) in unlawfully obtained funds are repaid to Plaintiff with interest;

**F.** For actual damages in an amount to be proven at trial;

**G.** For consequential and incidental damages in an amount to be proven at trial;

**H.** For the imposition of a constructive trust over all monies converted from Plaintiff and any property purchased therewith and/or proceeds;

**I.** For a declaration that Defendants hold the converted funds as constructive trustees for the benefit of the Plaintiff;

**J.** Trebled damages for the RICO cause of actions; against Defendants, each and every one of them, jointly and severally.

**K.** For an order requiring Defendant Brent Gregory to sign over all intellectual property obtained during his employment with Plaintiff, to Plaintiff.

**L.** For interest at the legal rate from the date of entry of judgment until paid in full;

**M.** For punitive damages to be determined at trial;

**N.** Attorney's fees and other litigation costs reasonably incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E);

**O.** For reasonable costs and attorneys' fees pursuant to A.R.S. § 12-341 and A.R.S. § 12-341.01; and

**P.** For such other and relief as the Court deems proper.

**RESPECTFULLY SUBMITTED** this day 13th of September, 2021.

**SADDLEWORTH LAW, PLLC**

*/s/ Craig W. Broadbent*

Craig W. Broadbent, Esq.
Lisa M. Hanger, Esq.
4742 N. 24th St. Suite 300
Phoenix, Arizona 85016
*Attorneys for Plaintiff*