**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Creative Power Solutions, | No. CV-21-01559-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Energy Services Group, et al., | |
| Defendants. | |

Plaintiff Creative Power Solutions ("CPS") accuses Defendants, some of whom are former CPS officers and employees, of creating a shell company through which they embezzled money from CPS. Defendants allegedly did so by operating this shell company as a staffing agency, transferring CPS employees to the shell company's payroll, and then charging those employees back to CPS at inflated rates, all while using CPS's facilities and infrastructure. In all, Defendants allegedly siphoned $1,738,662 from CPS. CPS claims Defendants' actions, among other things, violated the Federal Civil Racketeer Influenced and Corrupt Organizations Act. (Doc. 10.)

CPS filed this lawsuit on September 13, 2021 and immediately moved to temporarily seal the case and for the entry of an *ex parte* temporary restraining order ("TRO") freezing certain of Defendants' assets and ordering the preservation of evidence. (Docs. 1, 11.) CPS worries that Defendants, once receiving notice of this lawsuit, will destroy evidence and conceal or dissipate their assets, thereby depriving CPS the ability to

recover. The Court granted CPS's motion to temporarily seal this matter but denied its TRO motion without prejudice. The Court did so because CPS had not substantiated its embezzlement or irreparable harm allegations with sufficient evidence. However, the Court gave CPS an opportunity to renew its TRO motion to correct the deficiencies. (Doc. 15.) On September 27, 2021, CPS filed its renewed TRO motion. (Doc. 18.)

A TRO preserves the status quo pending a hearing on a preliminary injunction motion in order to avoid irreparable harm in the interim. *See Ariz. Recovery Housing Ass'n v. Ariz. Dep't of Health Servs.*, No. CV-20-00893-PHX-JAT, 2020 WL 8996590, at *1 (D. Ariz. May 14, 2020). The standards for issuing a TRO are identical to those for issuing a preliminary injunction. *Whitman v. Hawaiian Tug & Barge Corp./Young Bros., Ltd. Salaried Pension Plan*, 27 F. Supp. 2d 1225, 1228 (D. Haw. 1998). A plaintiff seeking a TRO must establish that it is likely to succeed on the merits, that it is likely to suffer irreparable harm in the absence of immediate relief, that the balance of equities tips in its favor, and that a TRO is in the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). These elements are balanced on a sliding scale, whereby a stronger showing of one element may offset a weaker showing of another, although all elements still must be met. *See Alliance for the Wild Rockies v. Cottrell*, 632 F. 3d 1127, 1131, 1134-35 (9th Cir. 2011). The movant bears the burden of proof on each element of the test. *Envtl. Council of Sacramento v. Slater*, 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000).

A party seeking an *ex parte* TRO also must comply with Federal Rule of Civil Procedure 65(b)(1) by (1) substantiating its allegations of irreparable harm with an affidavit or verified complaint and (2) certifying in writing any efforts made to give notice to the non-moving parties, and why notice should not be required. Further, the Court may issue a TRO only if the movant "gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). A TRO expires no later than 14 days after issuance, although the Court may, for good cause, extend the TRO for an additional 14 days. Fed.

R. Civ. P. 65(b)(2).

CPS previously submitted a declaration from counsel explaining that CPS has not attempted to provide notice to Defendants, and that notice should be excused because notice would likely lead to the dissipation or concealment of assets and the destruction of evidence. (Doc. 13.) CPS has now provided (1) declarations from Majed Toqan, President, Director, and shareholder of CPS (Doc. 18-1 at 2-5), and Rebecca Dent, a current CPS employee (Doc. 18-2 at 2-6), which substantiate the embezzlement allegations in the complaint. CPS also provides a declaration from a private investigator, Matthew Parker, who opines based on his investigation and review that (1) Defendants Brent Gregory and the Montaldeo Revocable Trust likely will become insolvent but for its real property assets, (2) Brent Gregory likely "has engaged, and may be continuing to engage, in a pattern of secreting or dissipating assets," and (3) that there are "strong indication[s] of probable illegal activity[.]" (Doc. 18-2 at 139-140.) This evidence supplements a forensic accounting report that substantiates CPS's allegation that is has suffered damages of at least $1,738,662. (Doc. 18-2 at 9-14.)

Based on this evidence, the Court finds that CPS has established the existence of serious questions going to the merits of its claims and a reasonable likelihood that, without a TRO, Defendants could dissipate or conceal assets that will be necessary to afford CPS relief should it ultimately prevail in this matter. *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009) ("A party seeking an asset freeze must show a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted."). Although an asset-freezing injunction will necessarily impose disabilities on Defendants, three facts lead the Court to find that the balance of hardships tips in CPS's favor. First, most of the assets subject to this order are real properties. Unless Defendants intended to convey these properties within the next few weeks, it seems unlikely that a freeze of these assets will have a real-world impact on them. Second, a TRO is by its nature temporary, meaning the restraints placed upon Defendants will not long endure unless CPS can meet its burden at the preliminary injunction stage. Third, the Court will require CPS

to post a bond to secure its TRO, and that bond will help mitigate the damages Defendants might suffer if they are found to have been wrongfully enjoined. Finally, the Court finds that the TRO serves the public interest by ensuring that potentially harmed plaintiffs have a meaningfully opportunity to recover their losses.

This brings the Court to the bond issue. The Court previously directed CPS to address in any renewed TRO motion what kind of security it believes would be appropriate. (Doc. 15 at 5 n.2.) CPS neglected to do so, and it has not provided the Court with an estimate of the value of the assets that will be subject to this order.[1] For now, the Court will set the bond at $2,500, but this amount is subject to modification if the evidence later shows that this amount is insufficient to pay the costs and damages of Defendants, should they be found to have been wrongfully enjoined.

**IT IS ORDERED** that CPS's renewed motion for an *ex parte* TRO (Doc. 18) is **GRANTED**. Defendants Brent Alan Gregory and Maria Rosario Gregory, as trustees of the Montaledo Revocable Trust established July 25, 2012, are temporarily enjoined from directly or indirectly:

> A. Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, granting a lien or security interest or other interest in, or otherwise disposing of real property, or;
>
> B. Incurring liens or encumbrances on real property, for the following property:
>
>> i. Defendant Brent Alan Gregory and Maria Rosario Gregory, Co-Trustee of the Montaledo Revocable Trust, established July 25, 2012
>>
>>> 1. Real Property located in Coconino County, Arizona, described as: Lot 14, of Saskan Ranch, according to the plat

---

[1] CPS's proposed order states that the "freeze of assets will be limited to . . . $1,738,662.00," but that representation does not tell the Court how much money is in Brent Gregory's BMO Harris account or the estimated value of the real properties held by the Montaledo Revocable Trust.

|   |   |
|---|---|
| 1 | of record in the office of the County Recorder of Coconino County, Arizona, recorded as Case 6, Map 22-22A. |
| 2 | 2. Real Property located in Maricopa County, Arizona, described as: Lot 13, of Scottsdale Mountain Parcel 6B, according to the plat of record in the office of the County Recorder of Maricopa County, Arizona, recorded in Book 384 of Maps, Page 44. |

1  of record in the office of the County Recorder of Coconino County, Arizona, recorded as Case 6, Map 22-22A.

2. Real Property located in Maricopa County, Arizona, described as: Lot 13, of Scottsdale Mountain Parcel 6B, according to the plat of record in the office of the County Recorder of Maricopa County, Arizona, recorded in Book 384 of Maps, Page 44.

C. Transferring, liquidating, converting, encumbering, pledging, loaning, concealing, dissipating, disbursing, assigning, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any funds at the named banking institution, for the following:

   i. Defendant Brent Alan Gregory

      1. Any and all excess proceeds on a Trustee's Sale held on July 8, 2021, for the Real Property located in Maricopa County, Arizona, described as: Lot 508, Verrado Parcel 5.505, according to the final plat thereof recorded in Book 859 of Maps, page 39, and Certificate of Correction recorded in Instrument No. 2006-1322719, official records of Maricopa County, Arizona.

      2. Any financial accounts at BMO Harris.

D. From concealing, dissipating, destroying, or erasing any evidence related to this case, including but not limited to account information, contracts, consumer lists, or financial records wherever located and however maintained, including outside the United States, that are: (1) owned or controlled, directly or indirectly, by any Defendant(s); (2) in the actual or constructive possession of any Defendant(s); or (3) owned, controlled by, or in the actual or constructive possession of any corporation, partnership,

or other entity directly or indirectly owned, managed, or controlled by, or under common control with any Defendant(s).

**IT IS FURTHER ORDERED** that, due to demands on the Court's calendar, the Court finds good cause to extend the duration of this TRO for an additional 14 days. This TRO will expire on **October 28, 2021**.

**IT IS FURTHER ORDERED** that, by no later than **October 5, 2021**, Plaintiff shall post a bond in the form of a cash deposit of **$2,500.00** with the Court in accordance with LRCiv 67.1. This bond is subject to modification if evidence shows that it will be inadequate to pay the costs and damages sustained by any party found to have been wrongfully enjoined.

**IT IS FURTHER ORDERED** that CPS serve Defendants with the summons, complaint, CPS's TRO motion, and this order by no later than **October 5, 2021**, and file proof thereof with the Court.

**IT IS FURTHER ORDERED** that CPS's motion for a TRO (Doc. 18) will be treated as a motion for a preliminary injunction going forward. Defendants' response to CPS's preliminary injunction motion is due by no later than **October 12, 2021**. CPS's optional reply is due by no later than **October 15, 2021**.

**IT IS FURTHER ORDERED** setting a hearing on CPS's motion for a preliminary injunction at **9:00 AM on October 20, 2021** in Courtroom 606, 401 West Washington Street, Phoenix, AZ 85003, before Judge Douglas L. Rayes. The parties shall jointly notify the Court in writing by no later than **October 15, 2021** whether this hearing will be an evidentiary hearing or an oral argument on the paper record.

**IT IS FURTHER ORDERED** that this matter is hereby unsealed.

Dated this 30th day of September, 2021.

Douglas L. Rayes
United States District Judge