**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Creative Power Solutions, | No. CV-21-01559-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Energy Services Group, et al., | |
| Defendants. | |

    Plaintiff Creative Power Solutions ("CPS") alleges that Defendants created a shell company through which they embezzled $1,738,662 from CPS in violation of, among other things, the Federal Civil Racketeer Influenced and Corrupt Organizations Act. (Doc. 10.)

    CPS filed this lawsuit on September 13, 2021 and immediately moved for an ex parte temporary restraining order ("TRO") freezing certain of Defendants' assets. (Doc. 11.) CPS worried that Defendants, once receiving notice of this lawsuit, would conceal or dissipate their assets, thereby depriving CPS the ability to recover damages. CPS also claimed that it was entitled to a constructive trust over the specific assets subject to its motion. The Court denied CPS's motion without prejudice because CPS had not (1) substantiated its allegations with sufficient evidence, (2) shown a likelihood that Defendants would hide or dissipate their assets to avoid judgment, or (3) shown that any of the assets subject to its motion were traceable to the allegedly embezzled funds, a prerequisite to its constructive trust remedy. (Doc. 15.)

On September 27, 2021, CPS renewed its TRO motion. (Doc. 18.) CPS's renewed motion abandons the constructive trust argument, and CPS acknowledged during oral argument that it presently has no evidence that any of the specific assets at issue are traceable to funds Defendants are alleged to have embezzled. Instead, CPS's renewed motion is based solely on the prospect that Defendants will become insolvent, or hide, secret, or dissipate their assets in order to avoid paying a judgment in this case. This time, CPS provided (1) declarations from Majed Toqan, President, Director, and shareholder of CPS (Doc. 18-1 at 2-5), and Rebecca Dent, a current CPS employee (Doc. 18-2 at 2-6), to substantiate CPS's claim that Defendants secretly siphoned money away from CPS. CPS also provided a declaration from a private investigator, Matthew Parker, who opined based on his investigation and review that (1) Defendants Brent Gregory and the Montaldeo Revocable Trust likely will become insolvent but for its real property assets, (2) Mr. Gregory likely "has engaged, and may be continuing to engage, in a pattern of secreting or dissipating assets," and (3) that there are "strong indication[s] of probable illegal activity[.]" (Doc. 18-2 at 139-140.) This evidence supplemented a forensic accounting report supporting CPS's allegation that it suffered damages of at least $1,738,662. (Doc. 18-2 at 9-14.)

Based on this evidence, the Court granted an ex parte TRO, converted CPS's TRO motion into a motion for a preliminary injunction, and set a preliminary injunction briefing and hearing schedule. (Doc. 20.) Thereafter, Defendants appeared and filed a response in opposition to CPS's motion for a preliminary injunction (Doc. 39), CPS filed a reply (Doc. 43), and the Court heard oral argument on November 17, 2021. Based on this fuller record, the Court denies CPS's motion for a preliminary injunction.

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To obtain a preliminary injunction, a plaintiff must show (1) a likelihood of success on the merits, (2) a likelihood that irreparable harm will occur in the absence of preliminary relief, (3) a balance of equities that favors a preliminary injunction, and (4) that the requested injunction is in the

public interest. *Id.* at 20. These elements can be balanced on a sliding scale, with a stronger showing of one element offsetting a weaker showing of another, although all factors still must be satisfied. *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131, 1134-35 (9th Cir. 2011). The movant bears the burden of proof on each element of the test. *Envtl. Council of Sacramento v. Slater*, 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000).

Defendants raise fair questions about the merits of CPS's claims, but the Court need not prejudge CPS's complaint to resolve the present motion. Rather, CPS's motion fails because CPS has not shown a likelihood of irreparable harm in the absence of preliminary relief. The harm CPS alleges it will suffer in the absence of a preliminary injunction is the inability to recover on a potential future judgment in its favor. Of course, there always is a chance that the prevailing party in civil litigation will be unable to recover on a judgment. And ordinarily, courts do not freeze defendants' assets whenever they are sued in order to make it easier for plaintiffs to collect on future judgments. Instead, "[a] party seeking an asset freeze must show a likelihood of dissipation *of the claimed assets*, or other inability to recover monetary damages, if relief is not granted." *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009) (emphasis added). This can be shown, for example, by evidence that Defendants will become insolvent or that they have "engaged in a pattern of secreting or dissipating assets *to avoid judgment*." *In re Estate of Ferdinand Marcos, Human Rights Litig.*, 25 F.3d 1467, 1480 (9th Cir. 1994) (emphasis added). CPS has not made this showing.

To begin, Defendants have persuasively shown that the opinion of CPS's private investigator, Mr. Parker, is speculative. Mr. Parker observed numerous real property transfers between Mr. Gregory, non-parties Daniel and Peggy Levitin, and the Montaledo Revocable Trust, and then concluded without explanation that "[t]here is generally no feasible explanation for this type of activity." (Doc. 18-2 at 145.) Yet in the same section of the report, Mr. Parker acknowledges that "there may be plausible explanations related to the real property transfers[.]" (*Id.*) Mr. Parker also investigated three bank accounts associated with Mr. Gregory and determined that two contained low dollar amounts

($500.00 and $300.00) and the third, with BMO Harris Bank, had recent financial activity but increased account security prevented him from learning more.  Mr. Parker does not explain why any of these observations make it likely that Defendants will hide the specific assets subject to this motion in order to avoid a judgment in this case.  Finally, Mr. Parker was unable to locate bank accounts associated with the Montaledo Revocable Trust and gave "two probable explanations: (1) there is a bank account in the trust name that was outside of the purview of [his] search, or (2) the trust does not hold a bank account in its name." (*Id.* at 146.)  Again, Mr. Parker failed to explain how his inability to locate bank accounts associated with the Montaledo Revocable Trust shows that Defendants will be unable to pay a judgment in this case.  At bottom, Mr. Parker's opinion appears to be based more on speculation than evidence.

In their response, Defendants fill in some of the details that seemed to have eluded Mr. Parker.  They explain that the Montaledo Revocable Trust was formed to provide life-long care for the Gregorys' disabled son. (Doc. 39-1 at 6; Doc. 39-7.)  The Gregorys have transferred most of their assets to the trust for the benefit of their son. (Doc. 39-1 at 6.) These assets include several bank accounts, investment accounts, and real estate assets. The trust owns free and clear a Flagstaff property worth roughly $1.1 million and a Scottsdale property worth roughly $875,000. (*Id.*; Doc. 39-7 at 39-40.)  And as for the mysterious BMO Harris Bank account with increased financial security—it is a mortgage account, not a bank account. (Doc. 39-1 at 6.) Given this trust was established in 2012—well before the allegations of embezzlement in this case—for the purpose of providing financial support for the Gregorys' disabled son, it is especially unlikely that Defendants would deplete the trust of its assets in response to this litigation.

In reply, CPS provides no evidence-based reason to believe that Defendants will hide or dissipate these assets to avoid a judgment in this case.  Instead, CPS argues that Defendants are more likely to secret or transfer these assets now that they know they are being accused of wrongdoing. (Doc. 43 at 9.)  But if such an argument were sufficient to secure an asset-freezing preliminary injunction, then asset freezes would be the norm, not

the exception. An asset-freezing injunction requires an evidence-based showing that a defendant will become insolvent, has engaged in a pattern of secreting or dissipating assets *to avoid judgment*. The evidence before the Court fails to establish that Defendants are at risk of insolvency. Indeed, their real estate assets, alone, are worth more than the amounts CPS claims were embezzled. And nothing about Defendants' finances indicates that they have engaged in a pattern of secreting or dissipating assets for the purpose of avoiding judgments. CPS argues that this pattern is established through the declarations of Mr. Toqan and Ms. Dent, who describe what they believe to be a scheme by Defendants to secretly siphon away funds belonging to CPS. But even if these allegations are true, that does not establish a likelihood that Defendants will secret or dissipate the specific assets at issue here, which are held in a trust established for benefit of the Gregorys' disabled son, and which is itself a defendant in this lawsuit.

**IT IS ORDERED** that the Court's October 1, 2021 TRO is dissolved and CPS's motion for a preliminary injunction (Doc. 18) is **DENIED**.

Dated this 17th day of November, 2021.

Douglas L. Rayes
United States District Judge