**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Creative Power Solutions, | No. CV-21-01559-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Energy Services Group, et al., | |
| Defendants. | |

Plaintiff Creative Power Solutions ("CPS") is an engineering company that specializes in combustion technology. CPS is suing Defendants Brent Gregory ("Gregory"), a former board member and President of CPS, and Maria Gregory ("Ms. Gregory"), a former board member and Secretary of CPS, for alleged wrongful actions they took while employed at CPS. CPS is also suing Defendants Energy Services Group ("ESG"), a limited liability company CPS alleges the Gregorys wrongfully diverted CPS' profits to; Innovative Energy ("Innovative"), the alleged alter ago of ESG; and the Montaldeo Revocable Trust ("Montaldeo Trust"), a family trust belonging to the Gregorys and an owner of ESG.

Pending before the Court are Defendants' motion for summary judgment (Doc. 179) and Plaintiff's motion for oral argument on Defendants' motion for summary judgment (Doc. 199). Because the issues are adequately briefed (*see* Docs. 179, 193, 198) and oral argument will not assist the Court in reaching its decision, the Court denies Plaintiff's

motion (Doc. 199). *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f). For the following reasons, the Court grants Defendants' motion for summary judgment in part.

## I.     BACKGROUND

Majed Toqan and Gregory are each minority shareholders of CPS. (Doc. 39-1.) Gregory served as President of CPS from 2004 to 2019, and Ms. Gregory served as Corporate Secretary. (Doc. 179–1.) Toqan, Gregory, and Ms. Gregory were all directors of CPS. (*Id.*)

CPS contracts to perform engineering services. One of its largest contracts is with Siemens. The parties dispute the details, but sometime in 2013 an internal disagreement between Toqan and Gregory arose over how CPS would perform or continue its contract with Siemens. Defendants claim Toqan restricted the hiring of more engineers at CPS, thereby precluding the company from being able to meet Siemens' demand for work. (Doc. 179 at 7.) CPS, on the other hand, claims Toqan favored expanding CPS' work with Siemens and that Gregory falsely told others that Toqan did not value Siemens' contract in an attempt to justify starting his own company—ESG. (Doc. 193 at 4.)

In 2014, Gregory and a former employee at CPS, Christopher Bonilha, formed ESG to serve as a subcontractor to CPS. Defendants claim that pursuant to the subcontracting relationship, ESG provided employees to CPS, which CPS billed to its customers (including Siemens). CPS profited by paying ESG less than the amount CPS collected from its customers for the work ESG's employees performed. (Doc. 39-1.) CPS claims that Defendants took active and extensive steps to conceal from Toqan and CPS Gregory's role in creating and managing ESG. (Doc. 193 at 8.) CPS alleges that Defendants wrongfully profited from and defrauded CPS by transferring existing CPS employees to ESG, using CPS to pay for ESG's overhead cost, and attempting to usurp CPS' contract with Siemens. (*Id.* at 8.)

Gregory ultimately resigned from CPS on November 15, 2019. (Doc. 39-1.) On September 13, 2021, CPS brought this action against Defendants asserting the following: civil RICO violations, conversion, fraud, civil conspiracy, fraudulent conspiracy,

1  intentional interference with a business relationship, aiding and abetting, breach of
2  fiduciary duty, breach of business opportunity doctrine, breach of contract and covenant of
3  good faith and fair dealing, unjust enrichment, and declaratory judgment. (Doc. 10.)
4  Defendants filed the pending motion for summary judgment, arguing that (1) CPS' claims
5  are time barred; (2) CPS has adduced no evidence that Gregory interfered in a business
6  relationship; and (3) CPS has adduced no evidence that the Montaldeo Trust is liable for
7  any of the alleged misconduct.

## II.   LEGAL STANDARD

The Court will grant summary judgment when, viewing the facts in a light most favorable to the nonmoving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the burden of showing an absence of genuine issues of material fact. *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau*, 690 F.2d 1240, 1250 (9th Cir. 1982). If the moving party meets this burden, the non-moving party must then set forth specific facts demonstrating there are genuine and material fact disputes. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

## III.  DISCUSSION

### A. Statute of limitations for CPS' state law claims

Defendants move for summary judgment on the basis that CPS' claims are time-barred. Arizona generally disfavors statute of limitations defenses, preferring to resolve litigation on the merits when possible. *City of Tucson v. Clear Channel Outdoor, Inc.*, 181 P.3d 219, 225 (Ariz. Ct. App. 2008). In determining whether a claim is time-barred, Arizona applies the "discovery rule," which holds that a plaintiff's action does not accrue until a plaintiff knows or should have known the underlying facts. *F.D.I.C. v. Jackson*, 133 F.3d 694, 698–99 (9th Cir. 1998) (citing *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 898 P.2d 964, 968 (Ariz. 1995)). However, Arizona also holds that limitations

periods are to be tolled when discovery of wrongdoing cannot be reasonably expected. *See e.g.*, *Tovrea Land & Cattle Co. v. Linsenmeyer*, 412 P.2d 47, 63–64 (Ariz. 1966); *Walk v. Ring*, 44 P.3d 990, 1000 (Ariz. 2002). Where the "tolling of the statute of limitations requires resolution of disputed factual issues," summary judgment is improper. *Retail Clerks Union Local 648, AFL-CIO v. Hub Pharmacy, Inc.*, 707 F.2d 1030, 1033 (9th Cir. 1983).

CPS argues that the doctrine of adverse domination tolls the limitations period for its claims. "The doctrine [of adverse domination] tolls the accrual of a cause of action based on the premise that a corporation does not have knowledge of a claim until the wrongdoing directors are no longer in control." *USACM Liquidating Trust v. Deloitte & Touche*, 754 F.3d 645, 649 (9th Cir. 2014). "Although no Arizona court has ever held that the doctrine applies in Arizona, the Ninth Circuit has predicted that the Arizona Supreme Court would so hold." *In re Bill Johnson's Restaurants, Inc.*, 255 F. Supp. 3d 927, 934 (D. Ariz. 2017) (citing *F.D.I.C. v. Jackson*, 133 F.3d 694, 698–99 (9th Cir. 1998) (holding that adverse domination doctrine may toll limitations period where wrongdoing directors engaged in gross negligence)).

"A plaintiff who seeks to toll [a] statute [of limitations] because the corporation was dominated must show full, complete and exclusive control in the directors or officers charged." *Mosesian v. Peat, Marwick, Mitchell & Co.*, 727 F.2d 873, 879 (9th Cir. 1984) (internal citation and quotation marks omitted). "[O]nce the corporate plaintiff shows that adverse domination exists, the defendants have the burden of showing that there was someone who had the knowledge, ability and motivation to bring suit during the period in which defendants controlled the corporation." *In re Verit Industries, Inc.*, 172 F.3d 61, at *2 (9th Cir. 1999). "The doctrine carries the same requirement of notice before accrual is deemed to have occurred. As with the discovery rule, the test is whether plaintiff knows or should know of the claim." *Id.* (quoting *Hecht v. Resolution Trust Corp.*, 635 A.2d 394, 408 (Md. 1994)).

  The Court finds there is a genuine dispute of fact as to whether Gregory's control of CPS prevented CPS from discovering the alleged wrongdoing. CPS had three directors from 2007 to October 2019: Toqan, Gregory, and Ms. Gregory. Gregory served as President of CPS, and Ms. Gregory served as the Corporate Secretary.

  CPS contends that "CPS was dominated by Gregory" and that while Gregory served as President and director of CPS, he engaged in a course of misconduct that was against the interest of corporation. CPS asserts that Gregory's duties included managing CPS, growing the business, hiring, firing, and contracting; that Gregory did not report to anyone except the shareholders; and that CPS employees did not have much interaction with Toqan. (Doc. 193 at 3.) CPS presents sufficient evidence for the Court to conclude that there is a genuine dispute of fact as to Gregory's degree of control of CPS and whether Toqan, as director, could have reasonably discovered the alleged wrongdoing. The record reflects that Gregory's role as President of CPS included growing the business, obtaining more profits, hiring and firing employees, and contracting. (Doc. 193-3 at 10–13.) In contrast, Toqan was not involved in the day-to-day operations of CPS. When asked whether he was aware of who was doing what at CPS between 2005 and 2019, Toqan testified "Not really. I mean, at the beginning . . . I knew some of the people, what they were working on . . . . But the rest . . . I did not know. I was not close to the operation." (Doc. 179-1 at 46.) Whereas Gregory and Ms. Gregory were located in the United States and oversaw CPS in person, Toqan primarily worked overseas and infrequently visited CPS. (*Id.*) Toqan's knowledge of CPS' operations and finances completely depended on information that Gregory provided him. (*Id.* at 69–70.)

  Defendants contend that CPS could have reasonably discovered any alleged wrongdoing because Toqan had access to CPS' financial data and received regular financial updates. (Doc. 198 at 2.) But CPS points to evidence that disputes this. For instance, CPS' controller, Rebecca Dent, testified in her deposition that CPS stored its financial data in excel sheets and a program called Quickbooks. (Doc. 198-2 at 37–40.) The excel sheets were saved in a shared CPS drive that could be accessed remotely;

however, there is no evidence that Toqan could access this shared drive from abroad. Dent also testified that while Gregory had access to Quickbooks starting back in 2015, Toqan did not gain access until 2019. (*Id.* at 40–41.) Furthermore, when information was sent to Toqan, Gregory was always the one to provide it to Toqan. (Doc. 193-1 at 82.)

Even if Toqan had access to CPS' financial and operational records (though Defendants have not established this beyond dispute), there is a genuine dispute of fact as to whether Gregory fraudulently concealed his wrongdoing. Fraudulent concealment tolls the statute of limitations until "such concealment is discovered, or reasonably should have been discovered." *Walk v. Ring*, 44 P.3d 990, 1000 (Ariz. 2002). "The wrongful concealment sufficient to toll a statute of limitations requires a positive act by the defendant taken for the purpose of preventing detection of the cause of the action." *Ulibarri v. Gerstenberger*, 871 P.2d 698, 709 (Ariz. Ct. App. 1993).

Dent—who Defendants concede was intimately familiar with ESG's relationship with CPS given her duties of bookkeeping, accounting, handlings audits, and performing human resources and administrative functions at CPS (Doc. 179 at 8)—testified that she was instructed not to discuss ESG in the office and that Gregory repeatedly told her not to have any contact with Toqan. (Doc. 193-1 at 38–39.) Dent also testified that Gregory, in overseeing her work as controller at CPS, ordered Dent to remove his name from entries in CPS' general ledgers. (Doc. 193 at 36–37.) Further, in 2019, near the end of Gregory's employment at CPS, he ordered Dent to "destroy" all of her CPS emails, which she did except for emails relating to payroll, and that at one point, Gregory himself deleted Dent's Skype messages with CPS employees. (Doc. 193-1 at 67–69.)

Christopher Bonilha, a former engineer and account manager at CPS who later helped Gregory formed ESG, attested that Gregory told him on multiple occasions that he should "keep quiet" about his employment with ESG; that no one at CPS was to know that Bonilha had any involvement with ESG; and that Toqan was not to be advised of Gregory's involvement with ESG to any extent. (Doc. 193-1 at 8–9.)

In sum, the Court finds that the tolling the statute of limitations, either for adverse domination or fraudulent concealment, requires resolution of disputed facts and so summary judgment on the basis of a statute of limitations defense is improper. *Logerguist v. Danforth*, 932 P.2d 281, 287 (Ariz. Ct. App. 1996) ("[T]he statute of limitations defense is not favored. . . . Application of the discovery rule often depends on resolution of such factual issues, this court's function is not to resolve disputed facts.") (citation omitted). With that in mind, the Court turns to each of CPS' state law claims, some of which are discussed in more detail to address additional arguments—other than tolling—raised by the parties.

1. Conversion (Count V), Fraud (Count V), Fraudulent Concealment (Count VII), Breach of Fiduciary Duty (Count X), Breach of Business Opportunity Doctrine (Count XI), and Unjust Enrichment (Count XV)

The Court finds there is a genuine dispute of fact as to whether the following claims are subject to tolling and thus denies Defendants' motion for summary judgment on these claims: Conversion[1] (Count V); Fraud (Count V[2]); Fraudulent Concealment (Count VII); Breach of Fiduciary Duty (Count X); and Breach of Business Opportunity Doctrine[3] (Count XI); and Unjust Enrichment (Count XV).

---

[1] Defendants note that conversion claims in Arizona are not subject to the discovery rule. (Doc. 179 at 20.) Nevertheless, a conversion claim may still be tolled where there is "some positive act of concealment done to prevent detection." *Jackson v. Am. Credit Bureau*, 531 P.2d 932, 935 (Ariz. Ct. App. 1975); *see also Sweeney v. Darricarrere*, No. 2:09-cv-00266-JWS, 2009 WL 2132696, at *6 (D. Ariz. July 14, 2009).

[2] The Complaint contains two causes of action labeled "Count V." (See Doc. 10 at 25–26.) For clarity, the Court refers to each cause of action as they are numbered in the Complaint.

[3] In passing, Defendants contend that "Counsel for Defendants has not been able to identify a cause of action for 'breach of the business opportunity doctrine' separate from a breach of fiduciary duty claim, and CPS has not adduced evidence [that] Gregory removed CPS from any contract and inserted ESG in its place." (Doc. 179 at 22.) "Misappropriation of a corporate opportunity occurs when a director has a specific duty to act in regard to the particular matter as a representative of the company and breaches that duty." *Dooley v. O'Brien*, 244 P.3d 586, 590 (Ariz. Ct. App. 2010); *Tovrea*, 412 P.2d at 57 (noting that breach of business opportunity doctrine occurs when a director, in violation of his fiduciary duty, hinders or usurps a business opportunity that the director's corporation has an actual or expectant interest in). Whether Gregory breached his fiduciary duty and hindered CPS' business interest in having CPS employees, rather than ESG contractors, perform the work for Siemens is a triable issue of fact. Thus, the Court denies CPS summary judgment on this claim.

2. Civil Conspiracy (Count VI) & Aiding and Abetting (Count IX)

Both civil conspiracy and aiding and abetting are claims for damages arising from an underlying tort. *Well Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund*, 38 P.3d 12, 23, 36 (Ariz. 2002). As a result, both claims are subject to the same limitations period as the underlying tort. *See Hansen v.* Stoll, 636 P.2d 1236, 1242 (Ariz. Ct. App. 1981) ("In determining what period of limitation applies, we look to the nature of the cause of action."). CPS' civil conspiracy and aiding and abetting claims are based on Gregory's alleged fraud. (Doc. 10 at 27–28, 32–33). Accordingly, because summary judgment is improper on CPS' fraud claim, it is also improper as to its civil conspiracy and aiding and abetting claims.

3. Breach of Contract (Counts XII and XIII) & Breach of the Implied Covenant of Good Faith and Fair Dealing (Count XIV)

Count XII is a breach of contract claim against Gregory arising out of his 2007 employment contract with CPS. CPS alleges that Gregory breached his contract by improperly establishing ESG and competing against CPS. (Doc. 10 at 37–38.) Count XIII alleges that Gregory breached his employment contract by improperly retaining income from CPS, taking excess vacation days, and improperly accepting travel reimbursements, health insurance coverage, 401K benefits, and other expenses. (*Id.* at 38.) Count XIV alleges Gregory breached the covenant of good faith and fair dealing implied in his employment contract. (*Id.* at 39.)

In arguing that these claims are time-barred, Defendants rely on two demand letters CPS sent to Gregory, the first on April 29, 2020, and the second on September 4, 2020. Defendants contend that these letters outline CPS' theories that Gregory breached his employment contract, and therefore these letters demonstrate that CPS was aware of its claims against Gregory more than one-year before it brought the instant action. Defendants assert that because there is a one-year statute of limitations for claims based on employment contracts, Counts XII, XIII, and XIV are time barred. (Doc. 179 at 3, 22 (citing A.R.S. § 12-541(3).)

The Court disagrees that these demand letters constitute uncontroverted evidence that CPS discovered these causes of action more than one year prior to September 13, 2021, the date CPS filed this case. The April demand letter discusses Gregory improperly paying himself excess vacation days, and reminds Gregory of ongoing obligations—confidentiality, non-solicitation, non-competition—he owes CPS pursuant to his employment contract. The letter also demands that Gregory cease any actions related to CPS' company bank accounts, cease communications with CPS' clients, and preserve evidence relevant to any of this conduct discussed. (Doc. 179-3 at 26–30.) The September demand letter requests that Gregory assign certain patent rights to CPS pursuant to a 2008 contract he signed with the CPS. (*Id.* at 32–33.)

The Court finds, and CPS concedes, that CPS' claim that Gregory improperly took excess vacation days falls outside the statute of limitations. (Doc. 193 at 26.) Because the April demand letter specifically addresses such a theory of liability, there is no dispute of fact that a claim for relief based on Gregory wrongfully taking excess vacation days is time-barred. (Doc. 179-3 at 27.) However, the other bases for CPS' breach of contract claims—that Gregory improperly competed against CPS through ESG and that he improperly retained profits and income from CPS—are not expressly mentioned in either of these demand letters. It remains that when CPS discovered Gregory's alleged wrongdoings is a genuine dispute of fact. Thus, the Court denies Defendants summary judgment based on a statute of limitations defenses for Counts XII, XIII, and XIV.

4. <u>Declaratory Judgment</u>

CPS also seeks declaratory judgment concerning Gregory's obligation, pursuant to his employment contract with CPS, to assign patents to CPS. (Doc. 10 at 40–41.) Arizona lacks a statute of limitations expressly applicable to declaratory relief actions. Thus, the Court determines the appropriate limitations period by "examining the substance of the action to identify the relationship out of which the claim arises and the relief is sought." *Canyon del Rio Inv'rs v. City of Flagstaff*, 258 P.3d 154, 159 (Ariz. Ct. App. 2011). CPS' declaratory relief claim rests on the theory that Gregory breached his employment contract

by refusing to assign his rights in certain patents to CPS. Accordingly, the one-year statute of limitations for breach of employment contracts applies. A.R.S. § 12-541(3); *see Stebbins v. Sullivan*, No. 1 CA-CV 14-0774, 2016 WL 492376, at *4 (Ariz. Ct. App. Feb. 9, 2016) (holding that one-year statute of limitations applicable to breaches of employment contracts applied because declaratory relief claim rested on theory that defendant breached his employment agreement by refusing to convey patent to plaintiff).

A claim for declaratory relief arises when there is "affirmative conduct by a party that removed the claim from the realm of mere possibility and creates an actual controversy." *Rogers v. Bd. of Regents of Univ. of Ariz.*, 311 P.3d 1075, 1082 (Ariz. Ct. App. 2013). CPS asked Gregory to assign the patents on September 13, 2020, when it sent Gregory its second demand letter. On October 16, 2020, Gregory responded by letter, refusing to assign the patents. (Doc. 179-5 at 15–16.) Gregory's refusal to assign the patents on October 16, 2020 is "affirmative conduct" creating an actual controversy. *Stebbins*, 2016 WL 492376, at *4 ("Sullivan's refusal to assign the patent rights in May 2008 . . . constituted such 'affirmative conduct.'"). Thus, Plaintiff's claim for declaratory relief falls within the one-year statute of limitations and is not barred. Summary judgment on this claim in favor of Defendants is denied.

### B. Statute of limitations for CPS' civil RICO Claims (Counts I to IV)

The statute of limitations for civil RICO claims is four years. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987). The Ninth Circuit follows the "injury discovery" rule to determine when a civil RICO claim accrues. Under that rule, the claim accrues when "the plaintiff knows or should know that she has been injured." *Grimmett v. Brown*, 75 F.2d 506, 512 (9th Cir. 1996). "The plaintiff need not discover that the injury is a part of a 'pattern of racketeering' for the period to begin to run." *Id.* at 510.

"Equitable tolling doctrines, including fraudulent concealment, apply in civil RICO cases." *Id.* at 514. "The doctrine is properly invoked only if a plaintiff establishes affirmative conduct upon the part of the defendant which would, under the circumstances of the case, lead a reasonable person to believe that he did not have a claim for relief."

*Pincay v. Andrews*, 238 F. 3d 1106, 1110 (9th Cir. 2001). If a plaintiff carries this burden, "defendants' actions [in concealing the fraud] provide a defense to a claim of constructive knowledge because these actions, by definition, prevented a reasonable person from discovering the fraud through the exercise of due diligence." *Beneficial Standard Life Ins. Co. v. Madariaga*, 851 F.2d 271, 275 (9th Cir. 1988).

For the same reasons discussed above, the Court finds that CPS has proffered sufficient evidence—that is, evidence pertaining to Gregory's affirmative steps to conceal ESG from Toqan and CPS—to raise a genuine issue of material fact as to when CPS knew or should have discovered its injuries. Because reasonable minds could differ on whether CPS' claims can be equitably tolled, summary judgment on these claims is improper. *Admiralty Fund v. Jones*, 677 F.2d 1289, 1293 (9th Cir. 1982); *see also Tanaka v. First Hawaiian Bank*, 104 F. Supp. 2d 1243, 1253 (D. Haw. 2000) (finding that plaintiffs' knowledge of fraud and knowledge of injury is disputed question of fact precluding summary judgment of civil RICO claims based on statute of limitations defense).

**C. Gregory's Intentional Interference with Business Relationship (Count VIII)**

Defendants contend that "CPS has adduced no evidence that CPS was removed from contracts and replaced with ESG" and thus Gregory is entitled to summary judgment on Count VIII as a matter of law. (Doc. 179 at 21.) The elements for a claim of intentional interference with a business relationship are: (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damages to the party whose relationship or expectancy has been disrupted. *Antwerp Diamond Exch. Of Am. v. Better Bus. Bureau of Maricopa Cnty.*, 637 P.2d 733, 739–40 (Ariz. 1981). CPS points to evidence that Gregory attempted to have Siemens contract directly with ESG instead of CPS (*see* Doc. 193-1 at 55)—though there is no evidence that such attempt proved successful—and that part of CPS' revenue from its contract with Siemens went to ESG to pay for the work ESG's employees performed. (*Id.* at 62–63).

However, CPS fails to point to evidence demonstrating that Gregory *induced or caused* Siemens to either breach or terminate its business relationship with CPS. To the contrary, the record reflects that, despite the introduction of ESG subcontractors to perform the work, Siemens maintained its business relationship and contract with CPS. Any alleged interference on Gregory's part has to do with how CPS—not Siemens—performed its obligations under its contract with Siemens (such as by using ESG subcontractors rather than CPS employees to provide the engineering services). CPS does not point to evidence supporting the third element of this claim, and so the Court grants Gregory summary judgment on this claim. *Celotex*, 477 U.S. at 322 (holding that summary judgment is required against a party who fails to make showing sufficient to establish existence of an element essential to that party's claim).

### D. Liability of Montaldeo Trust

Defendants contend that CPS has adduced no evidence that the Montaldeo Trust is liable for any of the alleged conduct. (Doc. 179 at 23.) CPS raises the following claims against the Montaldeo Trust: the four civil RICO claims (Counts I to IV), conversion (Count V), fraud (Count V[4]), and unjust enrichment (count XV). (Doc. 10.) Defendants argue that "the record establishes that the Montaldeo Trust was not involved in the management or work of ESG." Further, Defendants contend that it is well established that the owners and members of a limited liability company are shielded from liability and are not liable for the agents of the company solely by reason of acting as a member or manager of the entity. (Doc. 179 at 23.)

In response, CPS argues that the Montaldeo Trust became the owner of Gregory's interest in ESG "for the purpose of concealing Gregory's ownership of ESG." (Doc. 193 at 28.) CPS argues that the Montaldeo Trust is a family trust belonging to Gregory, and it was unjustly enriched by the fraudulent scheme at issue in which it was involved. (*Id.*)

The Court is not persuaded that CPS has met its burden of demonstrating a genuine and material dispute of fact exists as to the Montaldeo Trust's liability. Assuming *arguendo*

---

[4] *See* n.2.

- 12 -

that Gregory created the Trust to conceal his ownership in ESG, CPS does not explain how this establishes that the Trust itself is liable for fraudulent or wrongful conduct. Indeed, as Defendants point out, the record reflects that the Montaldeo Trust was not involved in either the management or work of ESG. (Doc. 179-1 at 51.) CPS does not dispute this.

Though it is its burden, CPS does not point to evidence demonstrating that the Trust managed or operated ESG through a pattern of racketeering activity (Count I); acquired and maintained an interest in an enterprise engaged in a pattern of racketeering activity (Count II); participated in a RICO enterprise through a pattern of racketing activity (Count III); conspired to engage in a pattern of racketeering activity (Count IV); unlawfully obtained funds from CPS and defrauded CPS to obtain such funds (Counts V and V); or unjustly enriched itself by wrongfully converting CPS' property (Count XV). It appears that CPS attempts to piggy-back the Trust's liability on evidence concerning specific actions Gregory, Ms. Gregory, and ESG took. What's more, CPS fails to explain why or how, under the law, Gregory, Ms. Gregory, and ESG's actions can be imputed onto the Trust. CPS' showing on this claim is insufficient to survive summary judgment.

CPS argues that Trust can be held liable for ESG's obligations under the doctrine of "piercing the corporate veil." (Doc. 193 at 28.) In Arizona, the corporate veil may be pierced only if there is sufficient evidence that "1) the corporation is the alter ego or business conduit of a person, and 2) disregarding the corporation's separate legal status is necessary to prevent injustice or fraud." *Loiselle v. Cosas Mgmt. Grp., LLC*, 228 P.3d 943, 950 (Ariz. Ct. App. 2010) (cleaned up). Alter ego status exists "when there is such unity of interest and ownership that the separate personalities of the corporation and owners cease to exist." *Dietel v. Day*, 492 P.2d 455, 457 (Ariz. Ct. App. 1972). CPS does not point to evidence demonstrating such a unity of interest and ownership between ESG and the Montaldeo Trust such that alter ego status exists.

Because CPS fails to demonstrate a genuine and material issue of fact exists as to the Montaldeo Trust's liability for the above-mentioned counts, the Court grants the Montaldeo Trust summary judgment.

**E. Request of Attorneys' Fees**

Defendants request an award of their attorneys' fees and costs pursuant to A.R.S. §§ 12-341 and 12-341.01. Section 12-341 provides that a successful party to a civil action shall recover from his adversary all costs expended or incurred. Section 12-341.01 provides for the recovery of attorney fees in a contested action arising out of a contract.

Because the Court denied summary judgment on the breach of contract claims, Defendants' request for attorney fees pursuant to § 12-341.01 is denied. As to § 12-341, Defendant Montaldeo Trust may be entitled to recover as the only Defendant in which the Court granted summary judgment in its favor on all Counts against it. However, the Court defers judgment at this time and denies Defendants' request without prejudice because Defendants fail to comply with LRCiv 54.2.

**IT IS SO ORDERED** that CPS' motion for oral argument (Doc. 199) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment (Doc. 179) is **GRANTED IN PART** as follows:

1) Defendant Montaldeo Revocable Trust is entitled to summary judgment on Counts I to IV (civil RICO claims), Count V (conversion), Count V (fraud), and Count XV (unjust enrichment).

2) Defendant Brent Gregory is entitled to summary judgment on Count VIII (intentional interference with business relationship).

3) The following claims against Defendants Brent Gregory, Maria Gregory, Energy Services Group, and Innovative Energy may proceed to trial: Counts I to IV (civil RICO claims); Count V (conversion); Count V (fraud); Count VI (civil conspiracy); Count VII (fraudulent concealment); Count IX (aiding and abetting); Count X (breach of fiduciary duty); Count XI (breach of the business opportunity doctrine); Count XII (breach of contract); Count XIII (breach of contract); Count XIV (breach of the covenant of good faith and fair dealing); Count XV (unjust enrichment); and Declaratory Judgment

4) The Court denies without prejudice Defendants' request for fees.

**IT IS FURTHER ORDERED** that the parties shall appear for a telephonic trial scheduling conference on **April 9, 2024, at 9:45 a.m. (Arizona time)**. Call-in instructions will be provided via separate email.

Dated this 25th day of March, 2024.

Douglas L. Rayes
United States District Judge